TONIA MECHAM, APPELLANT, V. JOHN McLEAY, M. D., ET AL.,
APPELLEES.

227 N. W. 2d 829

Filed April 10, 1975. No. 39523.

John J. Hanley, for appellant.

Joseph P. Cashen, William M. Lamson, Jr., and Charles M. Caldwell of Kennedy, Holland, DeLacy & Svoboda, Emil F. Sodoro, Michael P. Cavel, and Joseph S. Daly, for appellees.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, NEWTON, CLINTON, and BRODKEY, JJ.

WHITE, C. J.

In this malpractice action against the defendants, Doctors McLeay and Danneel, alleging failure to make a prompt diagnosis of pernicious anemia, the District Court dismissed the action against Danneel, the consulting neurologist, at the close of the plaintiff's evidence, and a jury verdict was returned in favor of the defendant McLeay, the original treatment doctor, on the issue of his negligence and the plaintiff's contributory negligence. Judgment was entered accordingly. We affirm the judgment of the District Court.

In 1970, the plaintiff, Mrs. Tonia Mecham, began experiencing general symptoms of fatigue, weakness, stomach distress, and numbness and tingling in her arms and legs. In spite of treatment for these generalized subjective symptoms, the plaintiff's symptoms worsened, and the numbness and tingling in her hands and feet spread and she began to have difficulty walking properly. McLeay decided to bring the defendant Danneel, a consulting neurologist, into the case for examination and diagnosis, and for that purpose she was admitted to Bergan Mercy Hospital in Omaha, Nebraska, on Thursday, March 25, 1971. The examination by Danneel was commenced on Friday, March 26, 1971, and blood tests were taken. On Monday, March 29, 1971, the plaintiff left the hospital without authorization and without the knowledge of Dr. Danneel. There is directly conflicting testimony as to whether she departed with or without McLeay's authorization. She did leave the hospital before Danneel had completed his examination, however. At the point of her departure from the hospital Danneel had provisionally diagnosed Mrs. Mecham's neurological symptoms as due to "peripheral neuritis" and McLeay at that time believed her stomach complaints were caused by an abdominal diaphragm or "hiatal" hernia. After discovering that Mrs. Mecham had left the hospital without his authorization, Dr. Danneel's nurse made an office appointment for her. After the making of the appointment, Mrs. Mecham called and canceled the appointment, saying that she was too sick to come in. She did not ask for or suggest a subsequent appointment. About 5 weeks later, on May 3, 1971, the plaintiff visited McLeay at his office and her symptoms were worsening. At this time, perhaps due to the difficulty involved in her leaving the hospital while under Danneel's care, McLeay referred her to two other specialists who examined her and arranged for further hospitalization and tests at the St. Joseph Hospital in Omaha, Nebraska. After extensive and very

specialized tests, involving consecutive blood examinations, the disease was finally diagnosed as pernicious anemia. Pernicious anemia is a special type of anemia, and is, for our purposes here, a blood disease whose general symptoms are weakness and shortness of breath. If pernicious anemia is untreated, however, a certain percentage of patients develop neurological symptoms related to the peripheral and central nervous system, including trouble with walking and with their hands. It is undisputed that the proper course of treatment is vitamin B12 injections, which are not a cure but only arrest the progress of the disease. In the plaintiff's case, the administered B12 injections which she re-, ceived from Doctors Stoner and Connor arrested the further worsening of her symptoms, but did not return her to normalcy. The evidence shows that at the time of the trial the plaintiff suffered from a 15 to 25 percent impairment of the leg functions and a 5 to 10 percent impairment of arm functions, including some spinal damage due to the pernicious anemia.

The plaintiff contends there was sufficient evidence to submit to the jury the issue of Danneel's negligence from failure to properly diagnose pernicious anemia considering the standards of medical practice in the community. We examine the facts more precisely as to this specific issue. Danneel was called in on the plaintiff's case as a neurologist consultant by Dr. McLeay and first saw her on Friday, March 26, 1971, at Bergan Mercy Hospital. Danneel examined her, . performed certain tests, and blood samples were taken. It is undisputed that Danneel expected to return to the hospital on Monday and make an examination of the results of the blood tests. From the record it could not be reasonably disputed that she was under the care and supervision of Danneel and that she knew the purpose of her being in Bergan Mercy Hospital was for consultation with Danneel, for the taking and completion of a series of tests, with the objective of reaching a further, more defini-

tive, or a final diagnosis of her general symptoms which were worsening. She left the hospital on the afternoon of Monday, March 29, 1971, on her own volition. She did not notify Danneel or receive his permission to leave. From her own testimony her only explanation is that no one told her *not* to leave until dismissed by Dr. Danneel. There is no testimony that she made inquiry of the nurse or hospital personnel or anyone else as to the propriety of her leaving. It is undisputed that Danneel set up an office appointment some time in April in order to *complete* his examination of her, and to advise her of his diagnosis, if any. She canceled this appointment and she testified that she waited until May 3, 1971, to see McLeay again *because she was too sick to come in sooner*. When she did come in on May 3, 1971, to McLeay she was then referred to Drs. Stoner and Connor, the proper tests were made and completed, and a diagnosis of pernicious anemia was made. The necessity for hospitalization, the careful control and supervision of the patient during hospitalization, the necessity for consecutive and refined scientific tests, all requiring the cooperation of the patient, is illustrated by the testimony that Dr. Stoner gave as to his examination. On admission to St. Joseph Hospital, a routine admission blood count was taken. This blood test report showed microcyticnomochromic anemia. This is a preliminary test. Results of the blood test give the specialists further clues regarding evidence to pursue in making a number of other tests which ultimately diagnose pernicious anemia. The final "the re-assuring test" is a Shilling test, which points up the lack of vitamin B12 in the body. This continuous and progressive medical procedure is the one accepted by the medical profession for diagnosing pernicious anemia and usually requires approximately 9 *days* of hospitalization.

The gist of the testimony of plaintiff's expert, Dr. Culiner of San Francisco, is that the *Bergan Mercy* Hospital blood count, which was taken about the time of

the plaintiff's initial admission, showed a number of variations from the normal and that the standard of care in view of the plaintiff's history, physical condition, and blood count should have indicated further investigation. At the same time he also stated that the blood count report at Bergan Mercy Hospital, as subsequently revealed, is not of itself diagnostic of pernicious anemia but only should lead to other tests which can in turn lead to the diagnosis. Almost all Culiner's testimony is directed to Danneel's preparation of the consultation report and his examination of the blood samples taken at that time indicating a requirement of further tests. As we have pointed out it is undisputed that the normal period of time for the completion of this diagnosis is about 9 days.

In determining what constitutes reasonable and ordinary care, skill, and diligence on the part of a doctor in a particular community, the test is that which physicians or surgeons in the same neighborhood and in similar communities engaged in the same or similar lines of work would ordinarily exercise for the benefit of their patients. Meyer v. Moell, 186 Neb. 397, 183 N. W. 2d 480; Restatement, Torts 2d, § 299A, p. 73. There is no direct evidence that Danneel's examination or actions, during the period of time the plaintiff was in the hospital and before her unauthorized departure, was in any way defective or inadequate. It is further clear from the testimony of plaintiff's own expert that the preliminary or first results of the blood samples Danneel ordered in the hospital indicated only that further tests and blood samples would have to be taken which indisputedly required the presence of the plaintiff. He could not have arrived at a diagnoisis of pernicious anemia on the basis of the only examinations he was permitted to perform while the plaintiff was present in the hospital. We do not explore any possible area of a doctor's duty to pursue a patient who has voluntarily and without notice left the hospital and then further cancels an

appointment to continue the examination and tests. No cases are cited which indicate negligence in this area and there is no evidence that there were any violations of the standard of care in the Omaha community with respect to any improper act on the part of the doctor in taking steps over and beyond making an appointment and the plaintiff's refusal to keep it. The record shows that the plaintiff failed on two separate occasions to present herself to Danneel for treatment. It further shows, as hereinbefore recited, that her only explanation was that she was too ill to keep or make such appointments and that was the reason she did not do anything further until reporting to Dr. McLeay on May 3, 1971. Ignoring the question of contributory negligence, reasonable minds could not say there is affirmative evidence showing that Danneel was negligent under the circumstances of this case. It is obvious that to hold Danneel negligent on the record and the facts here we would be required to say that Danneel had a duty, in some indefinable method by coercion, threats, or pressure to prevail upon the plaintiff to report back to him and the hospital for the further necessary tests to complete the diagnosis. There is no evidence in the record to the effect that doctors in similar localities or the vicinity of Omaha would have done more to apprise themselves of the plaintiff's condition than Danneel did. The contention that there was sufficient evidence to submit to the jury the issue of negligence of Danneel is without merit.

Error is asserted with reference to the jury verdict in favor of McLeay, in that the issue of contributory negligence should not have been given to the jury. It is asserted that as a matter of law, the evidence of Mrs. Mecham's conduct as to McLeay was not sufficient to constitute negligence, and, second, that the plaintiff's allegedly contributorily negligent conduct was not the proximate cause of her injuries and that any negligent conduct on her part was not concurrent but subsequent

to that of McLeay's, and therefore could not be the proximate cause of the failure to promptly diagnose pernicious anemia. We test the evidence in the light most favorable to the defendant, under the prevailing rule as to the reasonable inferences that could be drawn therefrom to support the jury verdict. Schmidt v. Johnson, 184 Neb. 643, 171 N. W. 2d 64; Cook v. Nordahl, 191 Neb. 424, 215 N. W. 2d 643. The acts and conduct of the plaintiff as they relate to the alleged failure of Danneel to make a proper diagnosis have heretofore been considered. Many of them relate to the issue of contributory negligence with reference to McLeay's conduct. Reasonable minds could conclude that the plaintiff had been negligent in three different respects. First, she disobeyed McLeay's instructions in not making an office appointment to see him professionally about her illness before March 3, 1971. McLeay testified that he saw Mrs. Mecham only socially from December 1970 to March 1971; that she complained of tiredness during that time, and that he exhorted her to make an appointment for a professional examination which she failed to do. A closely similar case is Somma v. United States, 180 F. Supp. 519 (E. D. Pa., 1960). In that case a Navy employee sued the United States for negligence in failure to detect and warn the plaintiff of tuberculosis which showed up on X-rays taken in 1954, 1955, and 1956. The Navy notified the plaintiff's family physician of irregularities in 1952 at which time the doctor pronounced him free of TB. The plaintiff had been singled out for a special Navy X-ray in 1954, 1955, and 1956 and felt ill in 1956. Yet he failed to see his family physician professionally during that time. The trial court held that plaintiff's failure to see his physician, knowing that he felt ill and had been singled out for a special X-ray (and plaintiff's failure to furnish his doctor's name on his last Navy X-ray) constituted contributory negligence. Further, plaintiff's contributory negligence was held to be the proximate cause of the damages because his negli-

gence prevented early diagnosis of tuberculosis, and recovery was barred. In the instant case, the jury could conclude that Mrs. Mecham failed to seek professional help before March 3, 1971, violated the standard of care which she was obliged to exercise for her own safety and well-being, and negligently contributed to the delayed diagnosis of pernicious anemia. Accordingly, the trial court properly submitted to the jury the question of whether the plaintiff was contributorily negligent in failing to follow Dr. McLeay's instructions to seek professional help when she was ill.

We point out that the jury could reasonably have found the plaintiff contributorily negligent in leaving Bergan Mercy Hospital before her tests were completed. With reference to *McLeay* this evidence is disputed but taken most favorably to McLeay it shows that the plaintiff left the hospital against McLeay's wishes and before she had seen Dr. Danneel on that day. We pointed out before, as to *Danneel*, that she left the hospital without permission, and that she failed to make or keep subsequent appointments. But as to McLeay she testified that she left the hospital with his consent or approval, and the District Court, therefore, submitted the conflicting testimony on this issue as to McLeay to the jury. There was not only sufficient evidence to submit this issue, but when considered in connection with her conduct with reference to Danneel's examination, the jury's finding on this issue is supported by something more than a minimum of evidence. In Gentile v. DeVirgilis, 290 Pa. 50, 138 A. 540, where the plaintiff failed to return to her dentist for further treatment as requested, the court wrote: " 'It is the duty of the patient to cooperate with his professional advisor, * * * but if he will not, or under the pressure of pain cannot, his neglect is his own wrong or misfortune, for which he has no right to hold his surgeon responsible': McCandless v. McWha, 22 Pa. 261, 268." See, generally, Annotation, Contributory Negligence or Assumption of Risk as a Defense in

Action Against Physician or Surgeon for Malpractice, 50 A. L. R. 2d 1043 (1956). See, also, Brown v. Dark, 196 Ark. 724, 119 S. W. 2d 529.

Summing up, the jury could reasonably conclude she was contributorily negligent with reference to her conduct and actions as to Danneel, the consulting doctor, and that such conduct was a proximate and contributing cause to the failure of a prompt diagnosis and any damages that she may have suffered. Consequently, we come to the conclusion that the court did not err in the submission of the issue of contributory negligence of the plaintiff in her action against the defendant McLeay.

Lastly, the plaintiff claims error in the admission of certain testimony concerning her actions in leaving Bergan Mercy Hospital on Monday, March 29, 1971, before her tests were completed. An examination of this claimed error reveals that the testimony was competent and admissible, and that it was received by the court without objection by the plaintiff. It is fundamental that when an objection to evidence is not timely made, such objection is waived. Sleezer v. Lang, 170 Neb. 239, 102 N. W. 2d 435. The contention is without merit.

The judgment of the District Court in dismissing the action against the defendant Danneel and in overruling the motion for a new trial and entering judgment in favor of the defendant McLeay is correct and is affirmed.

AFFIRMED.