Joseph **GRIPPE**, Plaintiff-Appellant,

v.

Dr. Sam **MOMTAZEE** and St. Louis Ob-Gyn Group, Inc.,
Defendants-Respondents.

No. 47512.

Missouri Court of Appeals,
Eastern District,
Division Four.

Jan. 14, 1986.

Motion for Rehearing and/or Transfer
Denied Feb. 11, 1986.

Application to Transfer Denied
March 25, 1986.

Samuel A. Goldblatt, Fox, Goldblatt & Singer, Inc., St. Louis, for plaintiff-appellant.

Joseph M. Kortenhof, Kortenhof & Ely, St. Louis, for defendants-respondents.

CARL R. GAERTNER, Presiding Judge.

This medical malpractice-wrongful death action is before this court for the second time. On plaintiff's appeal from a jury verdict and judgment in favor of defendants, we earlier ruled that plaintiff had failed to sustain his burden of proving a causal relationship between the alleged negligence of defendants and the death of his wife. The Supreme Court sustained a motion to transfer and has now remanded the appeal to this court with directions that we consider various allegations of trial court error. We are directed to address the issue of submissibility only in the event we first determine that plaintiff is entitled to a new trial. *Grippe v. Momtazee*, 696 S.W.2d 797 (Mo. banc 1985).

Plaintiff asserts trial court error 1) in the giving of Instruction No. 7 on contributory negligence, 2) in prohibiting his use of certain medical literature in cross-examination, 3) in quashing a subpoena duces tecum seeking production of records pertaining to other patients of the defendant, and 4) in excluding certain portions of deposition testimony. We address each issue in order.

I. *Contributory Negligence Instruction*

Plaintiff's contention that the trial court erred in giving Instruction No. 7 on contributory negligence necessitates a review of the evidence. We hasten to point out

that in our earlier opinion, circulated but never officially published, we viewed the evidence in the light most favorable to plaintiff in determining the issue of submissibility. Conversely, in considering the propriety of a contributory negligence instruction, we must view the evidence in the light most favorable to the defendants, giving them the benefit of all favorable inferences reasonably to be drawn from all of the evidence. Plaintiff's evidence is to be disregarded unless it tends to support the grounds of contributory negligence submitted in the instruction. *Welch v. Hyatt,* 578 S.W.2d 905, 912 (Mo. banc 1979).

Plaintiff's wife, Marie Grippe, had been a patient of Dr. Hutto, a gynecologist, from 1969 until the doctor's death in 1978. During that time she had a hysterectomy and a cyst in her left breast which Dr. Hutto aspirated. After his death, she consulted Dr. Momtazee. She was first examined by defendant on January 11, 1979. Mrs. Grippe, by deposition taken before her death, said she complained of pain in the area of a lump in her right breast. However, Dr. Momtazee testified and his office records reflected her sole complaint was soreness of both breasts. On examination both breasts were found to be "100% normal, negative." He instructed her to return in six months because "at one time I may find nothing wrong, and 6 months later you could have a problem." Mrs. Grippe claimed the lump continued to grow larger. She had read articles about lumps in the breast and was aware that increase in the size of a lump should be brought to the attention of a doctor without delay. Nevertheless, she did not return to the doctor until August 21, 1980, 19 months later. Her reason for the delay was that she was too involved in her work at the company she and her husband owned. She testified her time was more valuable. On this examination, Dr. Momtazee noted lumps in both breasts. Although he thought they were cysts, he suggested she consult a surgeon and recommended the names of two doctors she might see. She did not follow this suggestion but returned to Dr. Sam Momtazee on March 19, 1981.

This examination disclosed a two centimeter by two centimeter lump in the right breast. She was immediately referred to a surgeon previously recommended. A biopsy revealed the lump to be a poorly differentiated anaplastic tumor. A modified radical mastectomy was performed and it was found that the cancer had metastasized, involving two lymph nodes. Subsequent treatment was unavailing and Mrs. Grippe died on March 11, 1983.

This action was commenced by Mrs. Grippe and her husband prior to her death. The amended petition of her husband, filed on April 14, 1983, charged that Dr. Momtazee, individually and as the employee of St. Louis Ob-Gyn Group, Inc. negligently failed to diagnose his wife's breast cancer and that this negligence resulted in her death. At trial, plaintiff introduced the deposition testimony of a lawyer-doctor from Chicago, Robert Bouer. He testified that it was a deviation from accepted medical practice to fail to refer any 57 year old woman with a complaint of breast soreness to a surgeon or for mammography. He agreed that Dr. Momtazee was guilty of no negligence on the third visit. Further, he testified that if the doctor had suggested Mrs. Grippe see a surgeon on the second visit, this was in conformity with accepted practice. His criticism was leveled at the failure to make a reference at the January 11, 1979 visit.

The case was submitted to the jury under the following instructions:

### INSTRUCTION NO. 5

Your verdict must be for plaintiff Joseph Grippe and against defendants Dr. Sam Momtazee and St. Louis OB–GYN Group, Inc., a corporation, if you believe:

First, plaintiff was the spouse of Marie Grippe, and

Second, defendant Dr. Sam Momtazee failed to diagnose breast cancer, and

Third, defendant Dr. Sam Momtazee was thereby negligent, and

Fourth, as a direct result of such negligence Marie Grippe died, unless you

believe plaintiff is not entitled to recover by reason of Instruction No. 7. The term "negligent" or "negligence" as used in this instruction means the failure to use that degree of skill and learning ordinarily used under the same or similar circumstances by members of defendant's profession.

### INSTRUCTION NO. 7

Your verdict must be for defendants if you believe:

First, Marie Grippe failed to return to Dr. Momtazee following the January 11, 1979, visit until August 21, 1980, contrary to Dr. Momtazee's instructions, and

Second, Marie Grippe was thereby negligent, and

Third, such negligence of Marie Grippe directly caused or directly contributed to cause any damage plaintiff may have sustained.

The term "negligent" or "negligence" as used in this instruction means the failure to use that degree of care that an ordinarily careful and prudent person would use under the same or similar circumstances.

In attacking the contributory negligence instruction, plaintiff overlooks the differences between appellate review of submissibility of a plaintiff's case and appellate review of a contributory negligence submission. First of all, we view the evidence in the light most supportive of the instruction and the verdict. *Welch v. Hyatt, supra; Lane v. Cape Mutual Insurance Co.*, 674 S.W.2d 644, 645 (Mo.App. 1984). Additionally, as lucidly explained in *Tomlin v. Alford*, 351 S.W.2d 705 (Mo. 1961), a defendant, not voluntarily before the court, must plead and submit all defenses available to him even though they be inconsistent. In *Tomlin*, the Supreme Court approved the submission of a contributory negligence instruction supported by plaintiff's evidence even though the defendant's evidence consisted of a denial of the incident and a denial of the negligent act. Overruling prior decisions, the Supreme Court stated that although "a *plaintiff may not predicate recovery* upon a theory which is contrary to his own positive evidence," this rule does not apply to a contributory negligence submission. *Id.* at 711 (emphasis in the original). Were the defendant bound by the same rule as the plaintiff, said the *Tomlin* court, he "would be in the dilemma of being forced to select and submit at his peril only one of his valid defenses, thereby being deprived, for no good reason, of the very defense which, if submitted, may have gained him acquittance of the liability charged." *Id.* at 710. This principle is also noted in *Ellison v. Simmons*, 447 S.W.2d 66, 71 (Mo.1969).

Based upon these principles we accept as true Dr. Momtazee's testimony, supported by his office records, that he attempted to refer Mrs. Grippe to a surgeon on the occasion of the second visit on August 21, 1980, and we disregard her contrary evidence. Plaintiff's expert testimony was that referral to a surgeon conformed to the appropriate standard of care; therefore, viewed in this light, the only possible negligence on the part of Dr. Momtazee was his failure to discover the lump Mrs. Grippe said existed on January 11, 1979. Her failure to follow his instruction to return in 6 months, even though the lump was continually enlarging and she had read articles concerning the import of this fact, obviously contributed to the delay in surgical intervention until after metastasis.[1]

Plaintiff's expert testimony was to the effect that a cancer patient's chances of survival are reduced if surgical intervention is not undertaken before the carcinoma changes from stage I to stage II, a distinction measured by the size of the tumor and the spread to other organs. In Mrs.

---

1. Plaintiff's verdict directing instruction, that defendants negligently failed to diagnose breast cancer and that this caused Mrs. Grippe's death, is not an accurate submission of the theory which plaintiff attempted to develop by his evidence. This theory was that defendant's delay in making the diagnosis and referring her to a surgeon until after metastasis had occurred reduced her possible chances of survival and shortened her life span.

Grippe's case, when excised in April, 1981, the carcinoma had "barely" reached stage II. The jury could easily infer from this evidence that had Mrs. Grippe returned to the doctor in 6 months after the January 11, 1979 visit, or any time sooner than 19 months later when lumps were palpated and she was advised to see a surgeon, surgical intervention could have forestalled the stage II development.

Although we find no Missouri authority regarding the contributory effect of a patient's disregard of a physician's instructions, the subject has been considered in other jurisdictions. Closely analogous to the instant case is *Jamas v. Krpan*, 116 Ariz. 216, 568 P.2d 1114 (1977), wherein the failure of a plaintiff, knowledgeable about the significance of breast lumps, to follow her physician's instructions to return for a breast re-examination was held to be a factor supporting a jury instruction on contributory negligence. In *Mecham v. McLeay*, 193 Neb. 457, 227 N.W.2d 829 (1975) the plaintiff voiced complaints to the defendant doctor during social encounters from December until March. Her disregard of his advice on these occasions to make an appointment for a professional examination until March was held to justify a jury conclusion that she "violated the standard of care which she was obliged to exercise for her own safety and well-being, and negligently contributed to the delayed diagnosis of pernicious anemia." *Id.* 227 N.W.2d at 833.

The applicable rules are stated in 70 C.J.S., *Physicians and Surgeons*, § 51.

b. *Failure to follow instructions*

Failure of a patient to co-operate with his physician and to follow all reasonable and proper instructions, thereby contributing to the injury claimed to have arisen from the physician's negligence or malpractice, will bar recovery therefor.

d. *Failure to return*

A patient who, after receiving treatment, fails to return to the physician or surgeon for further treatment, as instructed, is guilty of contributory negligence preventing recovery from injurious consequences from such failure.

Here, plaintiff seeks to avoid application of these rules by positing two possible hypotheses: 1) that if the jury found the failure to diagnose occurred on the first visit, January 11, 1979, her failure to return was merely an aggravation of the damages, not a contributing cause thereof, and 2) that if the jury found the failure to diagnose occurred on the second visit, August 21, 1980, her failure to return before that date would be immaterial. Such speculation serves more to point out the infirmities of plaintiff's roving commission verdict director than it does reveal any error in the contributory negligence instruction.

As we have already noted, viewing the evidence in the light most supportive of the instruction and the jury verdict, Dr. Momtazee discovered the lumps on August 21, 1980 and attempted to refer Mrs. Grippe to a surgeon at that time. Plaintiff's own expert testimony established that this conformed to the appropriate standard of professional practice and was not negligent. This destroys the underlying premise of plaintiff's second hypothesis.

Assuming, arguendo, that there was evidence of negligence on the part of the doctor on the first visit in failing to discover and diagnose the carcinoma,[2] Mrs. Grippe's failure to return as instructed, rather than aggravating her damages, contributed to the very gist of plaintiff's cause of action: the failure to diagnose the cancer prior to metastasis. The theory of

**2.** There was no evidence adduced which would establish when the surgically excised tumor came into existence. In response to hypothetical questions, plaintiff's expert testified that if the tumor measured 5 centimeters by 5 centimeters when surgically excised, it might possibly have been detectable by mammography on January 11, 1979; if it measured two centimeters by two centimeters it could have been detected 12 months prior to April, 1981. When examined by another physician consulted for an unrelated reason, Mrs. Grippe's breasts were found to be normal in September, 1979. Interestingly, she told this physician that she was seeing an Ob-Gyn every six months.

plaintiff's case was that Mrs. Grippe's death resulted from the reduction of her possible chances of surviving the cancer which resulted from the change in the tumor from stage I to stage II, i.e. when metastasis occurred. No evidence pointed to the time of this occurrence, or even to a before and after range of outside limits, other than that the tumor had "barely" attained stage II status when surgically removed in April, 1981. Clearly the jury could have found that except for the patient's failure to return to Dr. Momtazee as instructed, the tumor could have been discovered earlier than August 21, 1980—the date the doctor did detect lumps and did take the appropriate action. We find no error in the giving of Instruction No. 7.

## II. *Use of Literature on Cross-Examination*

Plaintiff's attorney attempted to cross-examine Dr. Momtazee and Dr. Galakatos, who testified as an expert witness on behalf of defendants, by use of sentences taken from certain articles appearing in various medical publications. Reference is made to a dozen or more different publications varying from the prestigious Journal of the American Medical Association to others described as "throw-aways" consisting of an article or two surrounded by pharmaceutical advertisements. Regardless of the nature of the documents, the approach consistently taken by plaintiff's attorney was to ask the witness if he was "familiar" with the publication and then to ask if he agreed with a particular sentence contained therein. For the most part this was done without objection and usually the witness expressed agreement. Finally, after repeated questioning concerning several of these documents all related to a single issue, defense counsel began to object to further reference to additional articles on the grounds that no foundation had been laid. Many of these objections were sustained, and these rulings form the basis of plaintiff's second assignment of error.

The record does not reveal either the full text nor in many instances even the title of the excluded articles, nor have they been furnished to us. It is doubtful therefore if any claim of error has been preserved. Moreover, based upon what we are able to glean from the record, it appears that much of the excluded material was merely repetition cumulative to statements already accepted and agreed to by the witnesses. Nevertheless, the record clearly establishes the propriety of the action of the trial court in sustaining the objections.

■ A prerequisite to the use of scientific texts and treatises in the examination of an expert witness is evidence that they are authoritative. *Gridley v. Johnson*, 476 S.W.2d 475, 481 (Mo.1972), i.e. "possessing recognized or evident authority that elicits acquiescence and acceptance: having qualities that mark as definitive." Webster's Third New International Dictionary of the English Language, unabridged, 1981.

■ Mere familiarity of a witness with a publication or periodical does not render it authoritative. Rather, there must be some evidence of general acceptance and accreditation of the text or treatise within the profession. This may be conceded by the witness himself or it may be established by other experts in the field. *Gridley v. Johnson*, 476 S.W.2d at 481; *Kansas City v. Dugan*, 524 S.W.2d 194, 197 (Mo.App. 1975). The *Dugan* case explicitly points out the problem inherent in the use of scientific periodicals, such as the Journal of the American Medical Association, in the absence of such evidence.

> No claim of clairvoyancy is required to observe that the world abounds with self-appointed and self-proclaimed experts on virtually every subject that concerns or affects mankind. For this reason, and, as well, adherence to requirements which obtain to the exceptions to the hearsay rule, a party seeking to cross-examine a witness by means of an article or treatise must lay a foundation as to its authoritativeness. An article or treatise is not self-declaratory as being authoritative and, therefore, may not be indiscriminately used. See: Wigmore, Evidence (3rd Ed.). Vol. VI, § 1694, pp. 8–9.

524 S.W.2d at 196–97.

Articles published in periodicals and journals are not vested with the same trustwor-

thiness and reliability as that possessed by standard texts used in the practice and teaching of various professions. The latter are written for the benefit of the profession. The reputation of the author depends upon the correctness of his data and the validity of his conclusions, all of which will be subject to meticulous scrutiny by the author's peers. Moreover, such texts are not written from a biased or partisan point of view and usually explore differing viewpoints on controversial subjects. The trustworthiness arising from these considerations imparts an aura of acceptance and accreditation to such text. *See* Wigmore, Evidence, § 1692 (3rd Ed.1976).

Similar considerations do not necessarily attach to articles in periodicals and journals, even those as prestigious as the Journal of the American Medical Association and the New England Journal of Medicine. Many of the articles published in such journals are mere expressions of the authors' opinions on controversial subjects. For these reasons, many of such journals display disclaimers to the effect that the ideas expressed are not necessarily the views of the publisher. Many of the published articles relate to experimentation and speculation based upon preliminary studies and are intended to invoke comment and criticism. Mere inclusion of an article in a journal, no matter how prestigious the journal may be, does not confer acceptance and accreditation of the opinions expressed by the author. In order to fall within the "learned treatise" exception to the rule against hearsay, there must be some showing that the written material is generally accepted and regarded as authoritative within the profession. No such showing was made by plaintiff in this case. Point II is denied.

### III. *Quashing of the Subpoena Duces Tecum*

Plaintiff's third point alleges trial court error in quashing a subpoena duces tecum.

Apparently at some stage of the proceedings, plaintiff caused a subpoena duces tecum to be issued ordering production of all Dr. Momtazee's office records pertaining to his other patients. It is contended that these records were relevant in order to establish the doctor's habit of skipping a line between entries on his patients' medical charts. The August 21, 1980 entry on Mrs. Grippe's record, "to see a surgeon," did not reflect this "line-skipping" habit. Plaintiff argues he needed the other patients' records to bolster his contention that the specific entry was a later insertion made in contemplation of litigation. He argues before us that the trial court erred in quashing the subpoena duces tecum on the grounds of invasion of physician-patient privilege.

In view of the fact that other entries on the same page of Mrs. Grippe's record were made on successive lines, thus disproving plaintiff's speculative premise about Dr. Momtazee's habits, it would seem the balance between the need for such material and the potential for exposure of privileged information about other patients would tilt quite markedly in support of the trial court's ruling. However, because plaintiff has failed to provide a record on appeal which permits us to determine the question presented, we deny this point without reaching its merits.

The subpoena duces tecum has not been filed with this court. The abbreviated legal file contains no mention of a subpoena duces tecum, a motion to quash or any order thereon. Reference to the subpoena duces tecum is made in a chambers conference but this is limited to a comment that it was quashed by a judge other than the trial judge. We do not know what documents were demanded, when the demand was made, who, if anyone, was served with the subpoena, and, if so, how long before the trial. Other than the statement in appellant's brief that the subpoena sought the doctor's "office records for his other patients," we are totally uninformed regard-

ing the materials demanded. If there was any limitation as to a time period, or as to consultation or examination notes as opposed to x-ray and laboratory reports and financial data, it does not appear from the record before us. Plaintiff's abdication of his responsibility to provide a record containing everything necessary to determine the question presented requires us to deny his third point. *Brummit v. O'Fallon Brothers Construction Co.*, 671 S.W.2d 441, 442 (Mo.App.1984).

### IV. *Exclusion of Deposition Testimony*

Appellant's final point on appeal asserts trial court error in excluding from evidence portions of the video deposition testimony of Mrs. Grippe and of Dr. Bouer.

As to the deposition of Dr. Bouer, plaintiff's complaint relates to the exclusion of three words from an answer of the witness to a question on cross-examination.

Q. And if I understand your testimony with respect to the last visit, you have no criticism of him with respect to that particular visit, correct?

A. I have already stated that at that visit, he did the right thing, *albeit somewhat late.*

The trial court excluded the three underlined words. Plaintiff now argues that Rule 57.07(d)(3)(B) precludes the raising of an objection to the excluded portion of the answer because no objection was voiced when the deposition was taken. This argument assumes the objection was based upon the unresponsiveness of the three words, a matter of form. However, since nothing in the record on appeal shows what objection was made by whom and when, the argument here asserted by plaintiff is not adequately preserved for appellate review. "It is the duty of an appellant to furnish a transcript containing a record of proceedings which he desires to have reviewed. In the absence of such record there is nothing for the appellate court to decide." *Cooper v. General Standard, Inc.*, 674 S.W.2d 117, 122 (Mo.App.1984). Moreover, even if the three words were erroneously excluded from the presentation of a videotaped deposition covering 70 pages of written transcript, the doctor's gratuitous addition to his answer was merely a summation of what he had repeatedly stated in other testimony. There could be no possible prejudice to plaintiff by reason of the exclusion of these three words.

The same reasoning requires us to reject plaintiff's complaint relating to the exclusion of 16 separate portions of the video deposition of Mrs. Grippe. While the transcript discloses no record of any kind regarding objections and rulings on the deposition testimony of Dr. Bouer, there is a record, of sorts, pertaining to Mrs. Grippe's deposition testimony. However, the record was made after the videotape had been played for the jury. It consists merely of a statement of what portions of the testimony were excluded, but it does not include what objections were made or why the trial court ruled the evidence inadmissible. Plaintiff again asks us to assume the objections were based upon the unresponsive form of the answers. We refuse to speculate upon matters not shown by the record on appeal. Mere recital in an appellate brief of rulings purportedly made by the trial court, do not suffice in supplying the matters essential for review. *Ellis v. Farmer's Insurance Group*, 659 S.W.2d 3, 4 (Mo.App.1983); *City of St. Clair v. Cash*, 579 S.W.2d 763, 764 (Mo.App.1979).

Moreover, although review of the deposition transcript discloses that much of the excluded material consisted of volunteered statements not responsive to the questions, the answers, in the majority of cases, were also subject to objection based upon 'substance. For example, 5 of the 16 answers partially excluded related to Mrs. Grippe's conclusions about what doctors and nurses were thinking. Others were based upon obvious hearsay. We cannot assume that defendants' only objections to the testimony were based upon the nonresponsive form of the answers.

We do agree with the observation set forth in plaintiff's reply brief: "It is a good question how much prejudice this did

to plaintiff's case. Probably the excluded portions were not vital in and of themselves." We are precluded from reversing a judgment of the trial court in the absence of any showing that error was committed against the appellant "materially affecting the merits of the action." Rule 84.13(b); *Williams v. Venture Stores, Inc.*, 673 S.W.2d 480, 483 (Mo.App.1984). Despite the inadequacies of the record to preserve this point for review, we have gratuitously reviewed the deposition testimony of Mrs. Grippe and of Dr. Bouer. We find that none of the excluded material was of sufficient import or significance to have materially affected the merits of the action. Indeed, the statement quoted above from appellant's brief virtually concedes this fact. Point denied.

Having determined that none of the issues raised on appeal warrant the granting of a new trial, we do not reach the issue of the submissibility of plaintiff's case. Judgment affirmed.

SMITH and STEPHAN, JJ., concur.