Paul **HACKATHORN,** Plaintiff–Respondent,

v.

**LESTER E. COX MEDICAL CENTER,** Defendant–Appellant.

No. 17412.

Missouri Court of Appeals, Southern District, Division One.

Feb. 3, 1992.

Motion for Rehearing and/or Transfer to Supreme Court Denied Feb. 25, 1992.

Application to Transfer Denied March 24, 1992.

---

Daniel T. Moore, L. Joe Scott, Daniel T. Moore, Poplar Bluff, for plaintiff-respondent.

Donald W. Jones, Timothy E. Gammon, Hulston, Jones, Gammon & Marsh, Springfield, for defendant-appellant.

PREWITT, Presiding Judge.

Defendant is a non-profit corporation operating a hospital. Plaintiff was a patient in defendant's hospital when he suffered burns caused by a heating pad. Following jury trial plaintiff received judgment for $25,000. Defendant appeals.

The first contention presented by defendant is that the trial court erred in refusing to submit an instruction patterned after MAI 37.02 submitting fault of plaintiff. Plaintiff contends the instruction was improper because there was no evidence of fault by him or that any fault caused or contributed to plaintiff's damages.

In determining whether the evidence supported an instruction, this court views the evidence and all reasonable inferences to be drawn from it most favorable to the party tendering the instruction. *Grippe v. Momtazee,* 705 S.W.2d 551, 553

(Mo.App.1986); *Flannery v. Whitaker,* 612 S.W.2d 146, 148 (Mo.App.1981).

Plaintiff injured his back while picking up a tire on April 30, 1987. He was admitted into one of defendant's hospitals at approximately 6:00 p.m. that day. At that time or shortly after admission his doctor authorized a heating pad "as tolerated" and plaintiff was administered 75 milligrams of Demerol for pain. He received additional shots of Demerol later that evening and the next morning. Plaintiff testified he remembered the pad being put under his back sometime during the evening of April 30. His brother said he saw the heating pad being used on plaintiff when he visited him that evening. The following afternoon, May 1, 1987, at approximately 1:00 the heating pad was removed and burns to his back and blisters from them were observed.

Defendant's records show that the pad was present at 7:00 a.m. on May 1, but not before. Pamela Dawson, a nurse employed by defendant, made a notation on defendant's records that the pad was on plaintiff at 7:00 a.m. on May 1. Dawson worked from 7:00 in the morning until 3:00 in the afternoon. Nurses from the time plaintiff was admitted, who worked the two shifts preceding Dawson's shift, testified that if the pad had been put on during their shifts, the records should have reflected it.

In contending that there was evidence to support the instruction, defendant primarily relies upon the testimony of Dawson which follows:

[Q. Donald W. Jones, attorney for defendant] Just tell the jury what happened at that time, at 7:30[a.m. May 1, 1987], what did you do and what happened?

A I went in to make rounds on the patient, and assess him as you do all the patients on the ward, and I observed the heating pad on the patient, and protocol is to check the condition of the skin every four hours, and I asked the patient to turn for me so that I could check his back, to check the heating pad, and he refused to turn at that time.

Q Okay. Then—and so you put another place under there that another—the next line says position 0730 back. Right? Right there under the same place you wrote that, and then going back to the previous page, does it show the next time that you checked on the patient?

A On the previous page, and this is a continuation of the patient care flowing—or the flow sheet, excuse me, it's under musculoskeletal integumentary, it says, skin appearance and temperature at 8:00 o'clock, skin pink, warm, and dry, refers—refused to turn to have back checked now.

Q Okay. And tell the jury as best you recall what happened there that you were noting there at 8:00 o'clock?

A Again, I had went in to assess the patient and check his back and check the heating pad placement and he refused to turn.

Q Okay. Now then, is there a further reference on the flow sheet there as to the next time you went in to check him?

A Yes, sir.

Q And tell us what that is, first as to where it is and tell us what it is?

A This is again on the patient care flow sheet under skin appearance and temperature, at 9:00 o'clock a.m. refuses to turn, states, can't, informed he had a heating pad in place and I needed to check his back.

Q Okay. And then on the next sheet is there also a reference to that one, up on the—

A Yes, sir, under activity of a continuation of the patient care flow sheet I have 0900, which is 9:00 a.m., refuses to turn, refused to turn.

Q And then looking back at page 27 in your nurse's notes is there a further notation that you wrote there about that event at 9—on the 9:00 o'clock event?

A Yes, sir.

Q And read that to the jury, from page 27, what you wrote there.

A This is nursing progress notes, 9:00 o'clock a.m., incidental note, patient refuses to turn, times two, clothes cut off from admission, remains under patient, heating pad to low back in place. Pa-

tient states, I can't move or turn right now, maybe later. Informed I needed to check his back from his using the heating pad, states, I can't move right now.

Q And is that your signature, your signature there?

A My signature.

Q So you wrote all those things on the back at the time it occurred, right?

A Yes, sir.

Q And what was the significance of the—what you said, that there were—the clothes on his back had been cut off and left under him, what—explain that to the jury just so we be sure we understand that.

A The clothes he had on upon admission had been cut away from him frontwise, but they were still on him through his shoulders and arms, and the clothes was between him and the heating pad.

The instruction would have told the jury to assess a percentage of fault to plaintiff if he "failed or refused to allow the nurse to check his condition or the heat pad in relation to it," and, he "was thereby negligent, and ... such negligence ... directly caused or directly contributed to cause any damage plaintiff may have sustained."

Defendant primarily relies for authority under this point upon *Grippe*, supra 705 S.W.2d 551. It held proper a contributory negligence instruction submitting the failure of a patient to return to the defendant doctor's office as the doctor suggested. *Grippe* concludes that a patient's failure to return as requested may constitute negligence; determining that the failure of a patient to cooperate with a medical physician and to follow all reasonable instructions which contribute to the injury may be fault. 705 S.W.2d at 555.

■ The principle in *Grippe* is sound and should also apply to the failure to follow the reasonable and proper instructions of a hospital nurse. However, causation is lacking here. Of course, absolute and mathematical certainty is not required in proving causal connection. *Steele v. Woods*, 327 S.W.2d 187, 195 (Mo.1959). This can be proven by a reasonable inference from proven facts or circumstantial

evidence. *Id.* Nevertheless, it is pure speculation here whether plaintiff caused or contributed to his damages by failing to turn one or more of the three times he was asked to do so.

Assuming that failure of plaintiff to turn was covered in the instruction as the refusal "to allow the nurse to check his condition or the heat pad in relation to it", the trial court correctly refused the instruction. There was no evidence that plaintiff could turn and whether plaintiff had already been burned as much as he would be or whether he was burned thereafter was not shown. If we assume he was negligent in not following the nurse's orders, it was not established that such negligence caused or contributed to cause his injuries and damages.

Defendant's second point states:

The trial court erred in several rulings both prior to and in the course of the trial which both individually and cumulatively constituted prejudicial error requiring reversal or at least a new trial, including overruling defendant's challenge for cause to juror Walter Rosenbaum, overruling defendant's objections to improper closing argument by counsel, overruling defendant's objections to argumentative questions persistently asked to Pamela Dawson, refusing to allow defendant to read portions of deposition of plaintiff's expert nurse Keeney, allowing use of inflammatory colored photographs which were not properly authenticated, failure to grant a new trial upon learning the verdict was arrived at through improper deliberations, the submission of court's supplemental instructions when the jury failed to follow instructions in filling out the verdict form.

■ This point fails to say "wherein and why" the rulings of the trial court are claimed to be erroneous, as required by Rule 84.04(d), in most if not all of the seven actions of the trial court it refers to. The point also attempts to "shotgun" claimed errors of unrelated issues, a practice condemned in *Thummel v. King*, 570 S.W.2d

679, 688 (Mo. banc 1978), the leading case interpreting Rule 84.04(d).

 A point relied on must state wherein and why the trial court erred and "also violates Rule 84.04 when it groups together multiple contentions not related to a single issue." *Biever v. Williams*, 755 S.W.2d 291, 293 (Mo.App.1988). See also *Heins v. Murphy*, 610 S.W.2d 15, 18 (Mo.App.1980) (three alleged errors by the trial court should have been set out in separate points).

Nevertheless, we have examined the record regarding these contentions. Even if there was error in one or more of the particulars claimed, such error does not appear to be prejudicial so as to require reversal or the granting of a new trial. Point Two is denied.

 Defendant states in its remaining point that the trial court erred in failing to grant a new trial on grounds the verdict was excessive, "such excessiveness being a product of the individual and cumulative errors discussed under Points I and II." Finding no prejudicial error in the respects urged in Points I and II and concluding that the amount awarded was not excessive, this point is denied.

There was evidence that the burns to plaintiff's back caused him to be unable to sit or lie down; that blisters developed which filled up with fluid and burst; and that the burns delayed an operation on plaintiff's back, the condition for which he was hospitalized. After plaintiff entered the hospital, an operation to correct a herniated disc was scheduled, but that was delayed for two months because of the burns. During the two-month delay he suffered back pain because of the disc.

 The jury's determination of damages should not be disturbed unless the amount is so grossly excessive that it shocks the conscience of the court. *Gardner v. Reynolds*, 775 S.W.2d 173, 175 (Mo.App.1989). In determining whether a verdict is excessive, each case must be considered on its facts "with the ultimate test being what fairly and justly compensates plaintiff for the injuries sustained." *Id.*

The pain, suffering and inconvenience caused by the burns, the resulting blisters, and the pain during the two-month delay the burns caused sufficiently supported the amount of the verdict. This court is not shocked by the amount awarded and concludes the verdict was not excessive.

 Plaintiff filed a motion to dismiss the appeal for failure to comply with Rules 84.04(c) and 84.04(d). Although as set forth above it has merit in part, dismissing the appeal is not justified. The motion is denied.

The judgment is affirmed.

PARRISH and MONTGOMERY, JJ., concur.

CROW, J., disqualified.