**KANSAS CITY, Missouri, Respondent,**

v.

**John D. DUGAN, Appellant.**

**No. KCD 27380.**

Missouri Court of Appeals,
Kansas City District.

June 2, 1975.

Kenneth I. Grissinger, Kansas City, for appellant.

Aaron A. Wilson, City Atty., Louis W. Benecke, City Prosecutor, Walter J. O'Toole, Jr., Asst. City Atty., Kansas City, for respondent.

Before SOMERVILLE, P. J., PRITCH-ARD, C. J., and TURNAGE, J.

SOMERVILLE, Presiding Judge.

A jury found defendant guilty of driving while intoxicated in violation of Section 34.-116, Revised Ordinances of Kansas City, Missouri, and imposed a fine of $230.00 as punishment. Defendant contends on appeal that the trial court erred (1) in not permitting him to cross-examine two of the city's witnesses by asking them whether they agreed with a "statement" contained in "an authoritative journal" and (2) by admitting into evidence a so-called "Breathalyzer Log".

Gerald Fletcher, an officer on the Kansas City, Missouri Police Department, testified that on August 28, 1973, at approximately 1:00 a. m., he observed defendant driving a motor vehicle in an erratic fashion on the streets of Kansas City, Missouri. He signalled defendant to stop and to pull over to the curb. Thereupon, he noticed a strong odor of alcohol on defendant's breath, that defendant was "swaying", that defendant's eyes were bloodshot, and that defendant's speech was slurred. Based on the personal observations just mentioned, Officer Fletcher opined that defendant was intoxicated. Officer Fletcher further testified that he placed defendant under arrest for driving while intoxicated, transported him to police headquarters, and there administered to him a breathalyzer test, from which a reading of 0.19 was obtained.

Harry Gurin, an officer on the Kansas City, Missouri Police Department, presented as an expert witness by the city, testified, among other things, that he "serviced" the breathalyzer machine that was used to test defendant. He further testified that the particular breathalyzer machine was checked for accuracy on July 2, 1973, and on September 2, 1973, dates prior and subsequent to August 28, 1973, the date it was used to test defendant, and on both occasions it was "in good working order."

Edward Covey, a chemist for the "Regional Crime Laboratory", testified that he had tested ampules containing chemical agents from the breathalyzer machine in question and found them to be within the required tolerance.

During defense counsel's cross-examination of Officer Gurin, the following transpired:

"Q (By Mr. Grissinger, defense counsel) I will ask you to listen to this, and see whether you agree with this statement.

Mr. O'TOOLE (Assistant prosecutor): Your honor, I would object, until that particular item counselor is using is shown to be authoritative. It hasn't been up until now. I have no idea what it is.

MR. GRISSINGER: It is my intention to read a scientific article, from a well known journal, and I don't think I even have ti (sic) identify the author, under the rules of the court.

He has testified as an expert; and, I believe I may use it to test his qualifications, and see whether he agrees or does not agree with the various studies being done about the breathalyzer.

MR. O'TOOLE: It has got to be shown to be authoritative.

MR. GRISSINGER: It does not.

THE COURT: The objection is sustained."

Defense counsel never advised the trial court as to either the nature or source of the "statement" he sought Officer Gurin's concurrence in until after Officer Gurin left the witness stand. Belatedly, defense counsel made the following statement to the trial court: ". . . [I]t was my intention to read some work that was reported in J.A.M.A., the Journal of the American Medical Association, Vol. 226, Mo. 9, p. 1129, work done in Germany, on the breathalyzer itself".

Subsequent to the belated "advice" referred to above, defense counsel, during his cross-examination of Edward Covey, again tried to read from the same article and to obtain a commitment from the witness as to whether he agreed or disagreed with it. Again, the city attorney objected, and the objection was sustained.

Defendant's first point on appeal, verbatim, is "The court erred in not allowing the defendant to cross-examine a witness by use of an *authoritative* journal." (Emphasis added.) Its inefficacy is revealed by the record. Defendant made no attempt to establish the authoritativeness of the article. He apparently labored under the misapprehension that he was given carte blanche to cross-examine the city's witnesses by means of the article without laying any foundation that the article was authoritative.

Defendant neglected to favor the trial court or this court with a copy of the controversial article. However, this court's independent research disclosed that what was characterized by defendant as a "scientific article" was, in fact, a one-column squib contained in the "International Comment" section of the Journal of the American Medical Association, Vol. 226, Mo. 9, p. 1129, reporting that some unnamed German scientists had engaged in a study culminating in a report which concluded that "blood alcohol testing" revealed a more accurate level of inebriation than "breath alcohol testing". Even if one concedes that an aura of authority attaches to the Journal of the American Medical Association, it is patently obvious that the journal did not purport to lend the weight of its prestige to the study since the "full bloom" report was not published, but instead, briefly commented on in the journal by way of a one-column squib.

As previously mentioned, defendant made no effort whatsoever to establish the authoritativeness of the matter from which he sought to cross-examine the city's witnesses. No claim of clairvoyancy is required to observe that the world abounds with self-appointed and self-proclaimed experts on virtually every subject that concerns or affects mankind. For this reason, and, as well, adherence to requirements which obtain to the exceptions to the hearsay rule, a party seeking to cross-examine a witness by means of an article or treatise must lay a foundation as to its authoritativeness. An article or treatise is not self-declaratory as being authoritative and, therefore, may not be indiscriminately

used. See: Wigmore, Evidence (3rd Ed.), Vol. VI, § 1694, pp. 8–9. The fundamental propositions just mentioned are implicit in the case law of this state. MacDonald v. Metropolitan St. Ry. Co., 219 Mo. 468, 118 S.W. 78, 86 (1909), and Gridley v. Johnson, 476 S.W.2d 475, 481 (Mo.1972).

■ Three basic alternative methods have been judicially recognized for establishing the authoritativeness of an article or treatise for purposes of cross-examination. One method is for the trial court to take judicial notice that the article or treatise is authoritative. Darling v. Charleston Community Memorial Hospital, 33 Ill.2d 326, 211 N.E.2d 253, 259 (1965), and Jones v. Bloom, 388 Mich. 98, 200 N.W.2d 196, 206 (1972). A second method is for the witness sought to be cross-examined from an article or treatise to concede its authoritativeness. Gridley v. Johnson, supra, and Jones v. Bloom, supra. A third method is for the cross-examiner to prove the authoritativeness of the article or treatise by an independent expert. Gridley v. Johnson, supra, and Darling v. Charleston Community Memorial Hospital, supra. Defendant failed to avail himself of any of the recognized alternative methods. He did not ask the trial court to take judicial notice of the authoritativeness of the article from which he sought to cross-examine the city's witnesses (in fact, he never presented the article to the trial court for its perusal); nor did he seek to have the witnesses who were being cross-examined concede that the article was authoritative; nor did he attempt to prove that the article was authoritative by an independent expert witness.

■ The trial court cannot be said to have abused its discretion in not taking judicial notice of the article when it was never asked to do so, and, especially so, when the article was never presented to the trial court for its perusal. The one-column squib manifestly lacked any foundation establishing it to be authoritative, and for this reason the trial court did not err in refusing defense counsel permission to utilize it as a basis for cross-examining the city's witnesses.

■ Defendant's second and final point on appeal, verbatim, is, "The court erred in allowing plaintiff's Exhibit Number 1 to be introduced which purportedly was the breathalyzer log on instrument number 6231." Rule 84.04(d), V.A.M.R., applicable to defendant by virtue of Rule 28.18, pointedly and succinctly requires that ". . . points relied on shall state briefly and concisely what actions or rulings of the court are sought to be reviewed *and wherein and why they are claimed to be erroneous* . . . ." (Emphasis added.) Even the most superficial reading of defendant's second and final point discloses non-compliance with the controlling rule. Additionally, the imperfectly stated point was never raised in defendant's motion for new trial, and, consequently, never preserved for appellate review. State v. Meiers, 412 S.W.2d 478 (Mo.1967); State v. Brookshire, 353 S.W.2d 681 (Mo.1962); and Rule 27.20.

Judgment affirmed.       •

All concur.