**Janith COATS, Appellant,**

v.

**John A. HICKMAN, Respondent.**

**No. WD 56363.**

Missouri Court of Appeals,
Western District.

Dec. 28, 1999.

Motion for Rehearing and/or Transfer to Supreme Court Denied Feb. 1, 2000.

Application for Transfer Denied
March 21, 2000.

---

Martin M. Bauman, St. Joseph, for Appellant.

Ben T. Schmitt, Kansas City, for Respondent.

Before: ULRICH, P.J., and EDWIN H. SMITH and HOWARD, JJ.

EDWIN H. SMITH, Judge.

Janith Coats appeals from the judgment of the Circuit Court of Buchanan County, Missouri, for the respondent, John Hickman, on her claim for damages for personal injuries arising out of a motor vehicle accident with the respondent.

The appellant raises three points on appeal. In Point I, she claims that the trial court erred in overruling her objection to and motion for new trial with respect to the respondent's closing argument concerning her medical expert witness's lack of familiarity with alleged authoritative materials on myofascial pain syndrome (MPS) because this argument was not supported by the evidence in that the materials were never offered and admitted into evidence. In Point II, the appellant claims that the trial court erred in overruling her motion for new trial based on alleged improper closing argument of respondent's trial counsel because he engaged in improper personalization and referred to matters not in evidence. In Point III, the appellant claims the trial court erred in allowing, over her objection, the respondent's trial counsel, on cross-examination of Dr. Mark Noble, the appellant's treating urologist, to read a partial answer to a question from his deposition because it misled and confused the jury as to his actual testimony such that she was entitled to a new trial.

We affirm.

## Facts

On March 26, 1996, the appellant was a passenger in a pickup truck driven by Samuel Howe (Howe). Howe was driving west on Mitchell Avenue in St. Joseph, Buchanan County, Missouri, when he approached the traffic light at the intersection of Mitchell Avenue and Tenth Street. The light was green for traffic traveling on Mitchell Avenue when Howe entered the intersection. Howe's vehicle then collided with a pickup truck being driven north on Tenth Street by John Hickman, the respondent.

The respondent's vehicle struck the front driver's side of Howe's vehicle, causing the appellant to strike the steering column with her neck and left shoulder and slamming her back against the seat.

As a result, she ended up in a kneeling position between the dashboard and the seat. Jammed into her abdomen was a binder of class notes that the appellant, a cosmetology instructor, had been reviewing when the collision occurred.

After the accident, the appellant told the police officer at the scene that she was suffering neck pain, but refused to be taken to the hospital at that time. Later that day, she visited a chiropractor, Dr. James Kinnard, to treat the pain she said she was experiencing. The appellant claims that she told Dr. Kinnard she was experiencing abdominal pain at that visit, but his notes do not mention such a complaint.

The appellant claims that she began to experience incontinence within a month after the automobile accident, a problem which she attributed to the collision. The appellant saw a physician about three months after the accident, but she did not discuss any incontinence during the visit. The appellant did not seek treatment for her incontinence until over a year after the accident.

The appellant sued the respondent and Howe in the Circuit Court of Buchanan County for the injuries she claims to have sustained as a result of the automobile accident. On July 13, 1998, the court entered a default judgment against Howe. On that same day, a jury trial commenced on the appellant's claim against the respondent. The jury returned a verdict in favor of the respondent. On September 16, 1998, the court entered its judgment against the appellant and in favor of the respondent, assessing costs against the appellant.

This appeal follows.

## I.

■ In Point I, the appellant claims that the trial court erred in overruling her objection to and motion for new trial with respect to the respondent's closing argument concerning her medical expert witness's lack of familiarity with alleged authoritative materials on MPS because this argument was not supported by the evidence in that the materials never were offered and admitted into evidence. Although we find that error occurred as alleged, such error was not prejudicial, as discussed, *infra,* and, thus, the appellant's Point I is without merit.

■ "[T]he trial court is accorded broad discretion in ruling on the propriety of a closing argument to the jury and will suffer reversal only for an abuse of discretion." *Moore v. Missouri Pac. R.R. Co.,* 825 S.W.2d 839, 844 (Mo. *banc* 1992). This is so because the trial court is in the best position to evaluate the consequences of any impermissible comments. *Hammer v. Waterhouse,* 895 S.W.2d 95, 105 (Mo.App. 1995). "[C]ounsel is traditionally given wide latitude to suggest inferences from the evidence on closing argument." *Moore,* 825 S.W.2d at 844 (*citing Carter v. Liberty Equip. Co.,* 611 S.W.2d 311, 315 (Mo.App.1980)). "This is so 'even though the inferences drawn are illogical or erroneous.'" *Id.* (*quoting Eickmann v. St. Louis Pub. Serv. Co.,* 323 S.W.2d 802, 810 (Mo.1959)).

> "The permissible field of closing argument is a broad one, and as long as counsel confines himself to the evidence and does not go beyond the issues and urge prejudicial matters or urge a claim or defense which the evidence does not justify, he is to be given wide latitude in his comments."

*Whisenand v. McCord,* 996 S.W.2d 528, 531 (Mo.App.1999) (*quoting Hoehn v. Hampton,* 483 S.W.2d 403, 408 (Mo.App. 1972)). "A party is entitled to argue all the evidence presented for the determination by the jury." *Id.* (*quoting Hoehn,* 483 S.W.2d at 409). A trial court abuses its discretion in allowing closing argument when the challenged comments are "'plainly unwarranted and clearly injurious' to the adverse party." *Gerow v. Mitch Crawford Holiday Motors,* 987 S.W.2d 359, 363 (Mo.App.1999) (*quoting State v. Simmons,* 944 S.W.2d 165, 178–79

(Mo.*banc* ), *cert. denied,* 522 U.S. 953, 118 S.Ct. 376, 139 L.Ed.2d 293 (1997)). " 'In ruling on the propriety of final argument, the challenged comment must be interpreted in light of the entire record rather than in isolation.' " *Id.* at 363 (*quoting Kelly by Kelly v. Jackson,* 798 S.W.2d 699, 704 (Mo. *banc* 1990)).

As to the issue raised, the record reflects that the appellant called in her case-in-chief her treating chiropractor, Dr. Kinnard. On direct, he testified, *inter alia,* that the appellant suffered from MPS as a result of the accident. On cross-examination, with respect to his diagnosis, the respondent's counsel asked whether he was familiar with what counsel represented to be an authoritative treatise on MPS. In this regard, the record reflects:

Q. Had you ever read the Myofascial Pain and Dysfunction Trigger Point Manual?

A. No, I have not read that manual.

Q. Well, you know that's where the diagnosis started from, don't you?

A. No, I don't know that either.

Q. Never heard of Dr. Janet Travell (sp)?

A. No, I haven't.

Q. Have you ever seen two red books, Volume 1 and 2, called the Myofascial Pain and Trigger Point Manual?

A. No, I have not.

Q. But yet you're making the diagnosis of myofascial pain syndrome?

A. Yes, I am.

The appellant did not object to these questions. In closing argument, with respect to his assertion of claim building, the respondent's trial counsel stated:

Mr. Schmitt: All right. No evidence of claim building. The best evidence is this claim right over here and these figures (indicating). It starts and be-

gins there. And let me tell you that their entire case strikes me as one of claim building.

Let's begin with Dr. Kinnard. I make a diagnosis of myofascial pain syndrome. Doctor, can you tell us what the diagnostic criteria is and have you read the materials in order –

Mr. Randall Bauman: Objection. It's a misstatement of the testimony.

The Court: Overruled.

Mr. Schmitt: – and have you read the materials and do you understand, and have you ever even seen the books that it come [sic] from? No.

The books being referenced by respondent's counsel were Volumes 1 and 2 of the *Myofascial Pain and Dysfunction Trigger Point Manual* (the MPS manual), about which he asked during his cross-examination of Dr. Kinnard. It is this argument of counsel that the appellant contends entitled her to a new trial because it referred to matters not in evidence.

 Although learned treatises are hearsay and " 'are not of themselves direct and independent evidence' . . . [they] may be used during cross-examination to test or challenge an expert's testimony." *Kelly v. St. Luke's Hosp.,* 826 S.W.2d 391, 396 (Mo.App.1992) (citation omitted). For a treatise to be used in this fashion, however, there must be some evidence in the record that it is authoritative within the expert's profession.[1] *Embree v. Norfolk & W. Ry. Co.,* 907 S.W.2d 319, 325 (Mo.App. 1995). "To be authoritative, there must be some evidence of general acceptance and accreditation of the text or treatise within the profession." *Id.* " 'Evidence of the authoritative nature of the text or treatise may be (a) conceded by the witness himself, or (b) established by judicial notice, or (c) established by other experts in the field.' " *Id.* (*quoting Crain v. Newt Wake-*

---

1. Articles from periodic journals are inherently conferred less trustworthy and reliable than texts used in the practice and teaching of medicine. *Grippe v. Momtazee,* 705 S.W.2d 551, 556–557 (Mo.App.1986). "Texts are sub-ject to greater scrutiny from the profession and are written with less partisanship and bias to differing medical opinions." *Embree,* 907 S.W.2d at 325 (*citing Grippe,* 705 S.W.2d at 556–57).

*man, M.D., Inc.,* 800 S.W.2d 105, 107 (Mo. App.1990)).

There can be no dispute that the respondent's trial counsel's comments in closing argument concerning Dr. Kinnard's lack of familiarity on cross-examination with the MPS manual were made in an attempt to discredit his diagnosis of the appellant as suffering from MPS. Thus, as discussed, *supra,* in order to use the MPS manual in this fashion, the respondent was required to have laid a foundation that it was authoritative within Dr. Kinnard's profession. *Embree,* 907 S.W.2d at 325. A careful review of the record discloses that Dr. Kinnard never conceded that the MPS manual was authoritative, and the respondent did not establish this fact through judicial notice or the testimony of other experts. Hence, the respondent never laid the proper foundation for his use of the MPS manual to challenge the testimony of Dr. Kinnard on cross-examination concerning his diagnosis of MPS.

■■■ " '[I]t is axiomatic counsel should neither argue nor draw inferences from matters not in evidence and that a trial court errs in permitting such a discourse.'" *Noble v. Lansche,* 735 S.W.2d 63, 65 (Mo.App.1987) (*quoting Bergel v. Kassebaum,* 577 S.W.2d 863, 872 (Mo.App. 1978)). As such, because the respondent failed to establish the proper foundation for cross-examining Dr. Kinnard using the MPS manual, his comments during closing argument concerning this issue would, at first blush, appear to have been error to which the appellant objected. However, it is well settled in the law that the failure to object to the admission of evidence waives subsequent objection to the use of such evidence, even if the evidence would have been excluded if a proper objection had been timely lodged. *Reinert v. Director of Revenue,* 894 S.W.2d 162, 164 (Mo. *banc* 1995). Consequently, if Dr. Kinnard was cross-examined with the MPS manual without objection, the respondent's trial counsel's closing argument on this point would not be error, as the appellant contends.

Although the respondent's trial counsel had not laid a proper foundation for cross-examining Dr. Kinnard with the MPS manual, as found, *supra,* he nonetheless, after first establishing that Dr. Kinnard had never before seen or read the MPS manual and was not aware of the author of the manual or that it was the genesis of the diagnosis of MPS, proceeded to ask him: "Q. But yet you're making the diagnosis of myofascial pain syndrome? A. Yes, I am." The appellant contends that this questioning was not actually done to discredit Dr. Kinnard's diagnosis, but was simply part of the respondent's attempt to lay a proper foundation for the use of the MPS manual to accomplish the same, such that no objection was required. *See Frey v. Barnes Hosp.,* 706 S.W.2d 51, 55–57 (Mo.App.1986) (holding that party has right to lay proper foundation for admission of evidence and that objection is proper as to its admission, not to the foundational questions). We disagree. The clear import of the respondent's questioning at issue, in light of his final question, was to call into question Dr. Kinnard's diagnosis of MPS. Hence, it was at this time that the appellant should have objected, on the basis of a lack of foundation, to the respondent's cross-examination of Dr. Kinnard using the MPS manual. By her failure to do so, she waived any subsequent objection to this matter, including references to it by the respondent in his closing argument. *Reinert,* 894 S.W.2d at 164. As such, the respondent's challenged comments in closing argument were not improper, and the trial court did not err in failing to grant the appellant a new trial on this basis.

Point denied.

## II.

■■■ In Point II, the appellant claims that the trial court erred in overruling her motion for new trial based on alleged improper closing argument of the respondent's trial counsel because he engaged in

improper personalization and referred to matters not in evidence. Specifically, the appellant asserts that she was entitled to a new trial because the respondent's trial counsel stated in his closing argument that he would support the appellant's claim if it had merit, and that the appellant was engaging in claim building which the jury should not encourage by returning a verdict for her.

The appellant challenges the following portions of the respondent's closing argument as being improper:

1. Mr. Schmitt: It is common for me to look at a case and where someone has been reasonable, has generally told me the truth when I asked them questions, for me to support them or their claims at least in part and suggest that some of them ought to be paid. And those that make sense.

[Objection made and sustained.]

2. Mr. Schmitt: Ladies and gentlemen, I'm asking you to not support this claim. I'm asking you not to encourage it in this circumstance because if you encourage –

[Objection made and sustained.]

3. Mr. Schmitt: When you return a verdict do not encourage this claim. How can you not encourage it?

The appellant never objected to this last comment of respondent's trial counsel. As a result, no error was preserved for review as to it such that the appellant's only review with respect thereto would be for plain error under Rule 84.13(c),[2] which we discuss, *infra*. *Williams v. Jacobs*, 972 S.W.2d 334, 344 (Mo.App.1998).

 As to the first two challenged comments of the respondent's counsel's closing argument, the appellant objected, which objections the trial court sustained. She did not, however, at any time request a mistrial with respect to these comments. " 'A party may not assert as error that the

trial court failed to do more than was requested.' " *Heitner v. Gill*, 973 S.W.2d 98, 103 (Mo.App.1998) (*quoting Edley v. O'Brien*, 918 S.W.2d 898, 906 (Mo.App. 1996)). Thus, "[w]hen a trial court sustains an objection to improper argument and no further remedial action is requested by the objecting party, no error is preserved for appellate review." *Id.* (*citing Olsten v. Susman*, 391 S.W.2d 328, 330 (Mo.1965); *Hacker v. Quinn Concrete Co.*, 857 S.W.2d 402, 410 (Mo.App.1993)). Thus, because the appellant received all the relief she requested, any review of her claim as to this challenged portion of the respondent's closing argument would also be for plain error under Rule 84.13(c). *Chilton v. Gorden*, 952 S.W.2d 773, 780–81 (Mo.App.1997); *Rhodus v. Wheeler*, 927 S.W.2d 433, 437 (Mo.App.1996).

 Whether to grant plain error review under Rule 84.13(c) is a matter of discretion with this court. *Coleman v. Gilyard*, 969 S.W.2d 271, 274 (Mo.App.1998). We only will review a claim for plain error if it "facially establishes substantial grounds for believing that a 'manifest injustice or a miscarriage of justice' would result if left uncorrected." *Id.* (*quoting Brown v. Mercantile Bank*, 820 S.W.2d 327, 335 (Mo.App.1991)). "Plain error occurs in the case of closing argument if the 'closing argument contains reckless assertions, unwarranted by proof and intended to arouse prejudice, which, therefore, may be found to have caused a miscarriage of justice.' " *Williams*, 972 S.W.2d at 344 (*quoting Hensic v. Afshari Enters., Inc.*, 599 S.W.2d 522, 526 (Mo.App.1980)). As a practical matter, we rarely resort to plain error review in civil cases. *Coleman*, 969 S.W.2d at 274 (*citing Brown*, 820 S.W.2d at 335); *Chilton*, 952 S.W.2d at 780. We are even more reluctant to review an appellant's claim for plain error in a civil case where an objection was sustained and no further relief was requested. *Chilton*, 952

2. All rule references are to Missouri Rules of Civil Procedure (1998), unless otherwise indi-

cated.

S.W.2d at 780–81; *Rhodus,* 927 S.W.2d at 437. Further, "[r]arely will comments made during closing argument rise to the level of plain error, entitling a party to relief." *Williams,* 972 S.W.2d at 344. "Relief should rarely be granted on assertions of plain error as to closing argument because, 'in the absence of objection and request for relief, the trial court's options are narrowed to uninvited interference with summation and a corresponding increase of error by such intervention.'" *State v. Silvey,* 894 S.W.2d 662, 670 (Mo. banc 1995) (*quoting State v. Clemmons,* 753 S.W.2d 901, 907–08 (Mo. banc 1988)). Moreover, plain error review as to alleged objectionable closing argument should, as a practical matter, be denied in that "'trial strategy looms as an important consideration [in deciding whether to object] and such assertions are generally denied without explanation.'" *State v. Kinder,* 942 S.W.2d 313, 329 (Mo. banc 1996) (*quoting State v. Cobb,* 875 S.W.2d 533, 537 (Mo. banc 1994)).

In light of the foregoing principles of law and given the circumstances here, we refuse to grant plain error review. On its face, we find no merit in the appellant's claim that the challenged comments of the respondent's trial counsel during closing argument in any way changed the outcome of this case.

Point denied.

### III.

In Point III, the appellant claims the trial court erred in allowing, over her objection, the respondent's trial counsel, on cross-examination of Dr. Mark Noble, the appellant's treating urologist, to read a partial answer to a question from his deposition because it misled and confused the jury as to his actual testimony such that she was entitled to a new trial. We disagree.

As part of his cross-examination of Dr. Noble, the respondent's trial counsel read the following question and answer from Dr. Noble's deposition.

Question: Would you expect, in the absence of nerve damage, assuming that Ms. Coats had sustained some type of blunt trauma to her abdomen, would you expect her to begin having incontinence problems if the accident was March 26, 1996[,] by May 1, 1996?

Answer: If it's direct tearing and direct mechanical trauma I would expect the patient to begin to see some leakage if she were doing normal activities, but those are several ifs.

He chose not to read the remaining portion of the doctor's answer:

As I said, with my example of the rope, it could be a type of thing that would have been accelerated by the accident, maybe wouldn't have bothered her for 10 or 15 years but came a lot earlier because of the accident weakening something that led to her progressive change which ordinarily would have lasted, or support ligaments would have lasted a lot longer – longer and the muscles would have been better for a lot longer.

Initially, there is some question as to whether the appellant actually objected to trial counsel's failure to read the entire answer of the doctor so as to preserve her claim for appellate review. In the initial transcript provided to this court on appeal, there is no record of any objection by the appellant to the respondent's partial reading of the doctor's answer. A corrected version of the relevant portion of the transcript would reflect that there was a bench conference concerning this issue. Although the corrected version does not reflect a stated objection by the appellant's trial counsel, it would reflect that the trial court instructed counsel that: "He can read whatever portion he wants to and you whatever portion which you want." In any event, even assuming, *arguendo,* that the appellant did properly preserve her claim for review by objecting, it must still fail in that we find no prejudice resulted ultimately from the alleged improper action of

the respondent's trial counsel in reading the partial answer of Dr. Noble.

Not every error is reversible error. "To be reversible error, the appellant must demonstrate that she was prejudiced by the trial court's erroneous action." *State ex rel. Department of Soc. Servs., Division of Child Support Enforcement v. Maher,* 976 S.W.2d 75, 81 (Mo. App.1998). "Prejudice occurs when the error committed by the trial court materially affects the merits of the action, the result, or the outcome of the trial." *Id.* Here, the appellant contends that she was prejudiced by the partial reading of Dr. Noble's answer because, by reading only the first part of it, the jury was misled into believing that the doctor was of the opinion that she did not exhibit symptoms consistent with the injury she claimed resulted from the accident. Even assuming, without deciding, that prejudice did result to the appellant as claimed, it was subsequently cured. This is so in that the record reflects that immediately after the respondent's trial counsel concluded his reading from Dr. Noble's deposition, the appellant's trial counsel read the full answer of Dr. Noble to clear up any confusion that may have resulted from its partial reading by the respondent.

Point denied.

## Conclusion

The judgment of the circuit court in favor of the respondent on the appellant's claim for damages for personal injuries is affirmed.

All concur.