**Terry L. GUESS, Appellant,**

v.

**Nelson G. ESCOBAR, M.D., et al., Respondent.**

**No. WD 57148.**

Missouri Court of Appeals, Western District.

June 20, 2000.

Motion for Rehearing and/or Transfer to Supreme Court Denied Aug. 1, 2000.

Application for Transfer Denied Oct. 3, 2000.

any ongoing compression of the spinal cord. Dr. Escobar concluded that the cervical spine was stable due to a locking of bony portions, or facettes, of the C7 -T1 vertebrae that had resulted from the accident. He maintained Guess in the cervical collar put in place by the paramedics at the accident scene and transferred him to the intensive care unit. On January 26, 1986, four days later, Guess sneezed violently and reported that he felt his neck "pop."

Ronald M. Sokol, St. Joseph, for appellant.

William L. Yocum, Kansas City, for respondent.

Before JOSEPH M. ELLIS, Presiding Judge, PAUL M. SPINDEN, Judge and THOMAS H. NEWTON, Judge.

JOSEPH M. ELLIS, Judge.

On January 22, 1986, Terry Guess was involved in a single-vehicle accident in which he lost control of his vehicle, causing it to leave the roadway, roll over, and throw Guess from the vehicle. When paramedics arrived, he complained of neck and back pain. Paramedics evaluated Guess at the scene and determined he had normal sensation and the ability to move his extremities. The paramedics placed him in a cervical collar and transported him to Heartland Hospital in St. Joseph, Missouri (Heartland).

Upon arrival at Heartland, Guess began complaining of numbness and tingling in his extremities. Guess had a blood alcohol level of .159. Nelson Escobar, M.D., a physician trained in neurosurgery and rehabilitation medicine, examined him and determined Guess had lost function of his lower extremities, with no sensory function below the chest. From his analysis of an x-ray, Dr. Escobar diagnosed Guess as having suffered a severe cervical spinal cord injury and possible mild brain injury. However, he determined that the spinal canal was not compromised, nor was there

On January 27, 1986, five days after his admission to Heartland, Dr. Escobar ordered a CT scan of Guess' upper back and neck, which revealed fractures of the seventh cervical vertebra with lateral displacement. The following day, Dr. Escobar ordered a "Terry brace," a rigid brace extending from the chin to the chest, to restrict Guess' head and neck movement in anticipation of physical therapy.

At the time of his admission on January 22, 1986, Ellis Berkowitz, M.D., at the request of Dr. Escobar, evaluated Guess. Dr. Berkowitz, an internal medicine specialist, followed Guess during his hospitalization at Heartland for non-neurological internal medicine issues. On January 30, 1986, Dr. Berkowitz prescribed antibiotics for what was diagnosed as adynamic ileus, a condition involving weak or absent contractions of the colon necessary to digestion. Guess exhibited a loss of appetite, distended abdomen and elevated body temperature. His condition continued to worsen, and, on February 7, 1986, Guess underwent abdominal surgery which revealed a condition known as pseudomembranous colitis, an infection which had resulted in severe swelling and gangrene of the colon, requiring removal of the majority of the colon. On March 11, 1986, an x-ray revealed a fractured left scapula and healing fractures of his left ribs.

Guess remained at Heartland until March 12, 1986. During that time, the cervical collar was removed periodically due to skin reactions, without the provi-

sion of alternative neck stabilization. On March 12, 1986, Guess was transferred to Rusk Rehabilitation Institute in Columbia, Missouri (Rusk). Due to its initial evaluation of a suspected unstable cervical fracture and pulmonary problems, Rusk immediately transferred him to University Hospital, where he was placed in traction and a CT scan showed impingement of the C7—T1 vertebrae. Guess underwent surgery to align and fuse the vertebrae on March 17, 1986. Following surgery, his condition gradually improved and he was transferred back to Rusk for rehabilitation on March 31, 1986. Guess regained his ability to stand and walk without physical assistance, although he typically uses a walker.

On May 26, 1993, Guess filed an action for medical malpractice against Dr. Escobar for negligence related to neurosurgical care at Heartland and against Dr. Berkowitz for negligence resulting in the loss of his colon.[1] On January 8, 1998, after obtaining Dr. Escobar's deposition and over defendants' objection, Guess moved to sever the claims against Dr. Escobar from those against Dr. Berkowitz. The trial court overruled the motion on March 18, 1998, finding that the original joinder of the defendants was not improper and that Guess would not be prejudiced by presenting his claims against the defendants in one trial.

The case proceeded to trial on February 4, 1999 in the Circuit Court of Buchanan County. Following the admission of all evidence in the 5–day trial, the court granted each party forty-five (45) minutes for closing argument. The jury returned a verdict in favor of Dr. Escobar but was unable to reach a verdict on Guess' claim against Dr. Berkowitz. The court declared a mistrial as to the claim against Dr. Berkowitz and reset the case for trial. The court entered its final judgment in favor of Dr. Escobar on March 9, 1999,

and Guess' motion for new trial was denied on April 19, 1999. This appeal followed.

■ Guess brings three points of error on appeal. In his first point, he argues that the trial court erroneously refused to sever the trials of the two defendants because the facts, law and claims in each case differed significantly, each with its own set of complicated facts and separate witnesses, requiring the jury to consider two wholly separate matters. He contends that his ability to present a clear and focused case against each defendant was unfairly impaired. Guess asserts that the sheer volume of highly technical evidence in two disparate medical disciplines precluded the jury from properly evaluating the claims against Drs. Escobar and Berkowitz, thereby prejudicing him. Guess also argues that, as a result of the timing of calling witnesses necessitated by the dual cases, his case suffered dilution by the separation of time between the testimony of his expert and the submission of the case to the jury.

Dr. Escobar argues that the two claims arose from one accident and from treatment at the same hospital. He contends that separate trials against the two doctors would have frustrated the goals of judicial economy and would have required proof of common questions of fact. Dr. Escobar notes that he consulted with Dr. Berkowitz on Guess' treatment, and Dr. Clark Watts, a witness for Guess, alluded to a possible relationship between Guess' paralysis and the development of pseudomembranous colitis. He asserts that, if the court granted the motion to sever, each defendant could have been prejudiced by evidence relating to the medical condition which was not the subject of the claim against him.

Guess argues that at the time the action was initially filed, prior to discovery, it was not known whether the conduct and responsibility of the two defendants overlapped with regard to the different injuries

---

1. Guess also filed claims against Dr. Charles Mullican and Heartland Hospital. These two

defendants were dismissed from the case by the time of trial.

he suffered. The claim Guess ultimately brought against Dr. Escobar related solely to his paralysis; it alleged that Dr. Escobar failed to perform the necessary diagnostic tests to determine the extent and severity of his injuries in a timely fashion, that he failed to place Guess' neck in traction or a halo brace within the "golden hours" during the first two days after the accident, and that he failed to properly brace his cervical spine to prevent further deterioration of his neurological condition. The claim against Dr. Berkowitz alleged that his failure to timely diagnose and treat the pseudomembranous colitis condition resulted in the loss of Guess' colon. Guess did not allege that the two defendants were joint tortfeasors.

In his motion to sever the causes of action, Guess argued that he faced prejudice if both causes were tried together due to the potential confusion to the jury. He pointed out that the Malpractice Reform Act of 1986 [2] became effective on February 3, 1986, with the practical effect of necessitating separate damage submissions and verdict forms for each doctor. Guess asserted that these separate submissions and forms required the jury to apply different and, Guess argued, confusing standards to his claims against Drs. Escobar and Berkowitz. The circuit court overruled Guess' motion to sever, finding that the original joinder of the defendants was not improper and Guess would not be prejudiced by making his claims against the defendants in a single trial. The court also noted that Guess was not entitled to separate trials "as a matter of judicial economy."

■ Guess' motion to sever before trial was based soley on the trial court's discre-

tionary authority under Supreme Court Rule 66.02.[3]

■ Rule 66.02 states:

The court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, *may* order a separate trial of any claim, cross-claim, counterclaim, or third-party claim, or of any separate issue or of any number of claims, cross-claims, counterclaims, third-party claims, or issues.

(emphasis added). The decision of whether to allow severance of claims is within the sound discretion of the trial court, and we will not disturb the ruling of the court absent an abuse of discretion. *Wilson v. Bob Wood & Associates, Inc.,* 633 S.W.2d 738, 743 (Mo.App. W.D.1981). A discretionary ruling is presumed correct, and an abuse of discretion only occurs where we find the ruling is clearly against the logic of the circumstances and so arbitrary and unreasonable that it shocks the sense of justice. *State ex rel. Sago v. O'Brien,* 827 S.W.2d 754, 755 (Mo.App. E.D.1992).

■ In considering whether the trial court abused its discretion by refusing to sever, we must keep in mind that "[t]he policy of the law is to try all issues arising out of the same occurrence or series of occurrences together." *Bhagvandoss v. Beiersdorf, Inc.,* 723 S.W.2d 392, 395 (Mo. banc 1987). In *Bhagvandoss,* the plaintiff suffered severe injuries when his bicycle collided with an automobile. 723 S.W.2d at 393. Following his initial surgery, he developed an infection which aggravated his medical condition. *Id.* He filed suit against the motorist claiming negligence, and against the manufacturer of a bandage

---

**2.** §§ 538.205 to 538.235 (RSMo 1986).

**3.** Guess made no claim that joinder was improper under Rules 52.05 and 52.06 in the trial court nor does he make such a claim on appeal. Accordingly, we do not address this issue, but we do point out that, where the negligence alleged is from two separate, unrelated acts such as those in this case and the negligent acts are not part of a series of acts

or transactions that are related, as in this case, joinder is improper and the trial court must sever upon motion, having no discretion to do otherwise. *See generally Rules 52.05 and 52.06; State ex rel. Jinkerson v. Koehr,* 826 S.W.2d 346 (Mo. banc 1992); *State ex rel. Gulf Oil Corp. v. Weinstein,* 379 S.W.2d 172 (Mo.App. E.D.1964).

used during his treatment in a product liability claim, contending the bandage was contaminated, causing his infection. *Id.* The jury found in favor of the motorist, but ruled against the manufacturer. *Id.* The Supreme Court held that the trial court did not abuse its discretion in overruling the manufacturer's motion for severance or separate trial. *Id.* First, the Court determined that the jury would be aware that the plaintiff sustained serious injuries from the collision which could not be assigned to the manufacturer. *Bhagvandoss,* 723 S.W.2d at 395. In addition, a "clear delineation" existed between the evidence of the damage caused by the collision and the evidence of the additional damage caused by the infection. *Id.* Further, the Court noted no abuse of discretion occurred where the jury instructions indicated the extent of each defendant's potential liability. *Id.*

█ In this case, Guess emphasizes that his injuries arose out of two distinct factual situations, with "wholly separate and distinct" acts of negligence and damages, necessitating a severance of his claims against the two defendants. Utilizing the rationale in *Bhagvandoss,* however, the distinctness of each of Guess' medical conditions and claims actually would facilitate the jury's ability to attribute liability, or a lack thereof, to each of the doctors.[4] From the evidence presented, the jury would comprehend that Guess sustained certain injuries, such as the loss of most of his colon, which could not be attributed to Dr. Escobar. Significantly, Guess notes that he did not submit any allegation or evidence that Dr. Escobar's treatment contributed to the loss of his colon, or that Dr.

Berkowitz's treatment impacted the severity of his paralysis or his recovery therefrom. In addition, a "clear delineation" existed between the evidence related to the paralysis and the evidence related to the pseudomembranous colitis. Both Drs. Escobar and Berkowitz testified that their treatment did not impact or involve any treatment provided by the other. Separate expert witnesses testified both for and against each defendant. Guess points out that separate damage submissions and verdict forms were required for each defendant.[5] This factor provides further support for Dr. Escobar's argument that the trial court did not abuse its discretion; the separate jury instructions provided a limitation on the jury's ability to determine the extent of each doctor's liability. *Bhagvandoss,* 723 S.W.2d at 395. Contrary to Guess' contention that he was prejudiced by the potential confusion of the jury as a result of both cases being tried together, the logic of the Supreme Court in *Bhagvandoss* dictates that the jury is capable of making appropriate findings regarding multiple defendants, even in cases with separate and distinct factual and legal elements. *Id.*

We find that the trial court's denial of Guess' motion to sever is not against the logic of the circumstances, and, therefore, the trial court did not abuse its discretion in denying Guess' motion for severance. Point I is denied.

█ In his second point, Guess argues that the trial court erred in granting each defendant separately the same amount of time the court allowed him for closing argument. The trial court limited each of

---

4. *See also McDowell v. Kawasaki Motors Corp. USA,* 799 S.W.2d 854, 863 (Mo.App. W.D. 1990). In *McDowell,* a motorcyclist who sustained injuries as a result of a collision with a truck sued the truck driver and the motorcycle manufacturer in a personal injury action. *Id.* at 857–58. The court noted that "[t]he theories of liability supporting the claims against the two defendants were entirely different and separate." *Id.* at 863. The court nevertheless found that the trial court did not

abuse its discretion by failing to grant the motion to sever. *Id.*

5. Guess did not include the jury instructions in the record on appeal. "It is the appellant's responsibility to prepare the record on appeal. *Rule 81.12.* Matters omitted from the record will not be presumed to be favorable to the appellant." *Wilkerson v. Prelutsky,* 943 S.W.2d 643, 649 (Mo. banc 1997).

the three parties to 45 minutes each for closing argument; Guess contends that, due to the court's limitation of his argument to 45 minutes when each defendant also had 45 minutes to argue their individual cases, he was prejudiced by his inability to sufficiently summarize the two disparate and technical claims within the allowed time frame.

Counsel for Guess did not object to the court's time limitation at trial. During the instruction conference, the following exchange occurred:

> THE COURT: Now, we did discuss 45 minutes maximum for each side's closing argument. And did you—How did you want yours divided, Mr. Sokol?
>
> MR. SOKOL (Counsel for Guess): Your Honor, I think, let's say, 25 minutes and 20 in rebuttal. If I run over in the first half, then I'll take a deduction from the back half. Unless the other side needs more time, then I'll adjust it as the Court allows.

* * *

> MR. YOCUM (Counsel for Dr. Escobar): We—Are we getting 45, 45 and 45?
>
> THE COURT: I don't think you're required to join on this. That doesn't mean you have to use it all.
>
> MR. KOERNER (Counsel for Dr. Berkowitz): I don't think we will.
>
> MR. YOCUM: And you won't have to give me my warning.
>
> THE COURT: Okay.
>
> MR. KOERNER: Probably not.
>
> MR. SOKOL: You know, if they're—going to get 45 or—something like that, I might need a little more time than I've asked for. But if the Court feels it wouldn't indulge in that regard, I, I'll try—
>
> THE COURT: Well, I think each party is entitled to the same. So I don't think you're entitled to more than 45 total.
>
> MR. SOKOL: Okay.

* * *

While counsel for Guess clearly did not object to the court's ruling, Guess did raise the issue in his motion for new trial. An issue of error concerning closing argument is not preserved if raised for the first time in a motion for new trial. *Hensic v. Afshari Enterprises, Inc.,* 599 S.W.2d 522, 526 (Mo.App. E.D.1980). The trial court must have the opportunity to correct any prejudicial effect of an erroneous argument. *Id.* Because Guess failed to preserve this issue for appeal, Guess' point of error may be reviewed only for plain error. Plain error review is rarely applied in civil cases, *VanVolkenburgh v. McBride,* 2 S.W.3d 814, 819 (Mo.App. W.D.1999), and may not be invoked to cure the mere failure to make proper and timely objections. *Hensic,* 599 S.W.2d at 526. Plain error affecting substantial rights may be considered on appeal, at this court's discretion, even when not raised or preserved, when we find manifest injustice or a miscarriage of justice has resulted. *Rule 84.13(c); Lockwood v. Jackson County, Mo.,* 951 S.W.2d 354, 357 (Mo.App. W.D. 1997). While we are inclined to believe the trial erred in its allocation of time for closing argument, we perceive no manifest injustice or miscarriage of justice, and, therefore, decline to address the issue as plain error. *Coats v. Hickman,* 11 S.W.3d 798, 805–06 (Mo.App.W.D. 1999). Point II is denied.

Guess' third point relates to evidence introduced by both defendants regarding his alcohol consumption before the automobile accident. He argues that the evidence of his intoxication was not relevant or material to either the diagnosis or treatment of his physical condition, or to any matter or fact at issue in the case, and that he was prejudiced by its admission. Dr. Escobar contends that Guess waived any objection by interjecting the issue himself, or, in the alternative, that the issue was relevant to his treatment.

A decision on the admissibility of evidence is within the discretion of the trial court, and an evidentiary ruling will not be disturbed absent an abuse of discretion. *Robin Farms, Inc. v. Bartholome*, 989 S.W.2d 238, 252 (Mo.App. W.D.1999). The trial court does not abuse its discretion unless its ruling

> "is clearly against the logic of the circumstances then before the court and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration; if reasonable men can differ about the propriety of the action taken by the trial court, then it cannot be said that the trial court abused its discretion."

*Rodriguez v. Suzuki Motor Corp.*, 996 S.W.2d 47, 73 (Mo. banc 1999)(*quoting Shirrell v. Missouri Edison Co.*, 535 S.W.2d 446, 448 (Mo. banc 1976)). The primary criterion for the admission of evidence is relevancy. *Olinger v. General Heating & Cooling Co.*, 896 S.W.2d 43, 48 (Mo.App. W.D.1994). A court tests relevancy by determining whether the evidence offered tends to prove or disprove a fact in issue or corroborate other evidence. *Environmental Waste Management, Inc. v. Industrial Excavating & Equipment, Inc.*, 981 S.W.2d 607, 613 (Mo.App. W.D.1998)(*quoting Shop 'N Save Warehouse Foods, Inc. v. Soffer*, 918 S.W.2d 851, 863 (Mo.App. E.D.1996)). However, logically relevant evidence is not necessarily admissible. *Olinger*, 896 S.W.2d at 48. In order to be admissible, evidence must also be legally relevant. *Id.* "Legal relevance involves a process through which the probative value of the evidence (its usefulness) is weighed against the dangers of unfair prejudice, confusion of the issues, misleading the jury, undue delay, waste of time or needless presentation of cumulative evidence (the cost of evidence)." *Id.* (*quoting State v. Sladek*, 835 S.W.2d 308, 314 (Mo. banc 1992)). During trial, Guess moved *in limine* to exclude any evidence of his alcohol consumption or intoxication prior to the accident. Dr. Escobar objected and, in an offer of proof, testified that,

during his initial examination, Guess was confused and kept "fading in and out," making it more difficult for the doctor to obtain information to complete his exam. He testified that it would have been "nice if you can match the subjective findings with the objective findings, in other words, his responses with my examination...." Dr. Escobar stated that, when asked to move his legs, Guess could not respond, and he attributed the lack of response to his intoxication, stating "[i]t's nice if, you know, if I could've gotten a response...." The following testimony was given:

> Q: [D]id it make it more difficult for you to, in some manner, to arrive at a conclusion about what the nature and extent of his injury was?
>
> DR. ESCOBAR: From my neurological examination I, I had no doubts that he has a spinal cord injury from the outset. I mean, everybody knew it. The EMT knew it. The emergency room physician knew it. Dr. Beheler, who examined him. I mean, there was no question about that...But it make [sic] things difficult because this, this fellow was not responding. He was disoriented. He wasn't, you know—There were some higher cognitive functions there that were lacking really. So it was, yes, entirely due to the cerebral concussion, or was it combination of the concussion or the alcohol? I think that so many times. And, yes, it makes it very difficult not only few hours, five or six days. Terry doesn't remember those five, six days.

* * *

Dr. Escobar indicated that Guess' alcohol consumption affected his evaluation of Guess' ability to feel and the amount of that feeling.

On cross-examination, Dr. Escobar testified that the presence of alcohol makes diagnosing involuntary responses "very difficult because you have to match objective with subjective findings. And as I

said before, it, it is a very thin line." He ordered medications based upon the "spinal cord injury protocol," which he testified would not have been any different for Guess as a result of his intoxication. On redirect, Dr. Escobar stated that alcohol "make[s] things more difficult because you cannot assess all the damage." On re-cross-examination, he indicated that, whether alcohol plays a role or not, he assumes the worst and treats the patient accordingly. The court then asked Dr. Escobar the following questions:

THE COURT: You indicated that the alcohol masked certain responses?

DR. ESCOBAR: Yes, sir.

THE COURT: Can you in retrospect pinpoint anything you would've done different in your treatment because of the alcohol?

DR. ESCOBAR: I was suspecting that through the ensuing hours and [sic] that he would give me a, a better response to or, or a, or, or trying to see there was any difference in response in regards to what neurological function [sic]. Mainly, I was just trying to see is he getting worse, do I need to do something different. So if he, he would've indicated to me by his responses on my exam that he had an impending worsening of the neurological sign, [sic] symptoms, the first thing I was going to do was take him to surgery, do a CT scan, do a myelogram, or something to [sic] that, to try to find out why he was getting worse, and do something different. But unfortunately, Terry is stay [sic] confused for several days, and so we, we kept relying on the what you call objective findings. *Yes, it would've changed things.*

\* \* \*

(emphasis added). The court denied Guess' motion to exclude evidence of his alcohol consumption, finding such evidence was relevant and impacted the examination of Guess by Dr. Escobar.

We first address Dr. Escobar's contention that Guess waived any objection to testimony regarding his intoxication because he raised the issue first on direct examination of his expert witness. The question asked of Dr. Watts, Guess' expert witness, was, "Doctor, what, if any effect would the presence or absence of the odor of alcohol in such a patient make?" The record reveals that the question did not specifically pertain to Guess' intoxication and whether it affected the diagnosis in this case, but rather to treatment of a hypothetical case. A comment that is sufficiently vague does not serve to open the door for introduction of evidence on the basis that the opposing party first introduced it. *See M.A.B. v. Nicely,* 909 S.W.2d 669, 672 (Mo. banc 1995)[6]. In this case, the question did not specifically relate to Guess' condition upon admission to Heartland and therefore did not serve to waive Guess' objection.

Next, we address Guess' claim that the trial court abused its discretion in admitting evidence of Guess' alcohol consumption. In *Johnston v. Conger,* 854 S.W.2d 480 (Mo.App. W.D.1993), this court stated that "evidence of the intoxication of a witness is relevant and material to the witness's ability to see, hear, perceive, and observe." *Id.* at 483. In *Rodriguez v. Suzuki Motor Corp.,* 936 S.W.2d 104 (Mo. banc 1996), our Supreme Court quoted that language with approval and stated that such "evidence is admissible by cross-examination or by independent testimony." *Id.* at 106. Most recently, the Eastern District of this court has held that evidence of a plaintiff's alcohol consumption is relevant and admissible in a medical malpractice action because "it is relevant and material to a witness's ability to see, hear, perceive, and observe." *Dean v. St. Anthony's Medical Center,* 978 S.W.2d 423,

6. *M.A.B. v. Nicely,* 909 S.W.2d 669 (Mo. banc 1995) has been modified. However, the modifications do not impact the cited proposition.

**244**

426 (Mo.App. E.D.1998). In *Dean*, a medical malpractice case involving an alleged failure to properly diagnose, the court found that evidence of alcohol consumption was highly relevant in explaining the plaintiff patient's "response (or lack thereof) to the physical examination performed by Dr. Rumley." *Id.* at 426. In this case, as in *Dean*, the central issue of the case against Dr. Escobar involved whether he exercised the degree of skill and learning that a treating physician ordinarily would exercise in the same or similar circumstances. *Id.* Dr. Escobar testified Guess' alcohol consumption affected his treatment of Guess. Even though, from the outset, Dr. Escobar "had no doubts" that Guess sustained a spinal cord injury, he testified that Guess' consumption of alcohol made his diagnosis and treatment more difficult. Guess' alcohol consumption affected his ability to communicate with Dr. Escobar and limited the doctor's ability to link subjective findings regarding the injury with his objective findings. The presence of alcohol increased the difficulty of assessing the damage to Guess. In fact, Dr. Escobar stated that "it would have changed things" with regard to treatment if Guess had not been under the influence of alcohol. Therefore, we find that the evidence was legally relevant to explain Dr. Escobar's failure to properly diagnose Guess' condition upon his arrival at Heartland. The trial court did not abuse its discretion in admitting the evidence of Guess' alcohol consumption. Point III is denied.

The judgment of the trial court is affirmed.

All concur.