EDWARD R. ARDINI, JR., JUDGE
William Carter ("Carter") appeals his conviction entered by the Circuit Court of Jackson County for trespass in the first degree, a Class B misdemeanor. Carter alleges the trial court abused its discretion by prohibiting use of a report, Strengthening Forensic Science in the United States: A Path Forward ("NAS Report"), during the cross-examination of the State's fingerprint expert. Finding no abuse of discretion, we affirm.
FACTUAL AND PROCEDURAL BACKGROUND
At approximately 8:00 am on January 16, 2014, Michael Taylor ("Taylor") arrived home from work to find a mirrored closet door lying on his bedroom floor. An initial examination of the area revealed that guns were missing from the closet and an air conditioning unit had been removed from a window. After discovering his telephone lines had been cut, Taylor went to a neighbor's home and called police. Responding officers secured the house and allowed Taylor to inventory his belongings. He determined that a camera, tablet, and Xbox *94 unit[1] were also missing. In addition, investigators were able to lift fingerprints from the mirrored closet door.
During the course of the investigation, it was discovered that the Xbox unit had been pawned by Carter's uncle at a Cash America pawn shop in Kansas City approximately six days after the burglary. In addition, a fingerprint analyst, through use of the ACE-V method,[2] determined that one of the fingerprints found on the mirrored closet door was a match to Carter. Despite being confronted with the report showing that his fingerprint had been found at the crime scene, Carter told police that he did not know Taylor, had never been in Taylor's home, and denied involvement in the burglary. Carter was charged with felony burglary in the second degree and felony stealing. A later-filed information in lieu of indictment reduced the second count to misdemeanor stealing.
Prior to trial, Carter filed a motion to exclude the evidence of the partial fingerprint comparison, using the NAS Report to argue that the scientific principles underlying fingerprint analysis are not reliable. The trial court denied the motion, finding that fingerprint comparison has long been recognized as reliable in the scientific community and admissible in the State of Missouri.[3] See, e.g. , State v. Hightower , 511 S.W.3d 454, 459-60 (Mo. App. E.D. 2017) (holding that evidence from latent fingerprint examination using the ACE-V method was admissible under Frye as "sufficiently established to have gained general acceptance in the particular field in which it belongs" (citations and internal quotation marks omitted) ); see also State v. Phillips , 511 S.W.2d 841, 844 (Mo. 1974) (noting that evidence regarding the comparison of fingerprints is a matter for an expert witness and, "when testified to by an expert witness, is admissible to establish identity in criminal proceedings" (citation omitted) ).
The State thereafter filed a motion in limine , seeking to exclude reference to the NAS Report at trial because, the State argued, the report is not authoritative within the relevant scientific community. Defense counsel countered that the trial court was required to take judicial notice of the NAS Report under section 490.150,[4] which provides that "[p]ublic documents, purporting to be edited or printed by authority of congress, or either house thereof, shall be evidence to the same extent that authenticated copies of the same would be." The trial court declined to take judicial notice of the report, noting that "[t]he document appear[ed] to be printed by or published by the National Research Council of the National Academies and the National Academies Press" rather than under the authority of congress as required by section 490.150. While refusing to take judicial notice of the NAS Report, the trial court agreed to allow defense counsel to voir dire the State's expert prior to her trial testimony for the purpose of establishing the foundational requirements for use of the report during the cross-examination of the expert.
*95 During the trial, the State's fingerprint expert was questioned by defense counsel outside the presence of the jury. The expert confirmed familiarity with the NAS Report but made clear that it was not viewed as authoritative by any sanctioning body in her field. The expert further testified that, although other publications may provide recommendations and guidelines, standards within her field were established by the Federal Bureau of Investigation and Department of Justice. The trial court ruled that Carter had failed to establish the NAS Report was an authoritative writing in the field of fingerprint analysis and prohibited its use by Carter.[5]
Carter was found guilty of first-degree trespassing (a lesser-included offense of felony burglary in the second degree) and acquitted of the stealing charge. Carter moved for judgment of acquittal or, in the alternative, for a new trial, arguing that the trial court erred when it excluded reference to the NAS Report "in that this exhibit is a learned treatise under Missouri law and is a document edited or printed by the authority of Congress and therefore the court should have taken judicial notice [of the exhibit] under [section] 490.150." His motion was denied, and he was sentenced to six months in the Jackson County Department of Corrections. Execution of Carter's sentence was suspended, and he was placed on probation for two years.
PRESERVATION AND STANDARD OF REVIEW
Carter's sole point on appeal alleges the trial court abused its discretion by prohibiting use of the NAS Report, which he contends is a learned treatise, to cross-examine the State's fingerprint expert. Carter specifically claims that the trial court was required to take judicial notice of the report under section 490.150 because it is a "public document purporting to be edited or printed by authority of congress" and argues that the trial court's refusal to allow him to use the report was not harmless because he "would have likely successfully impeached the validity of the opinion of the fingerprint analyst[.]"
Prior to considering whether the trial court erred by not permitting use of the NAS Report, we must first determine whether the issue was preserved for our review. The State argues that Carter failed to preserve the claim of error because he never attempted to use the NAS Report at trial. See State v. Ryland , 533 S.W.3d 742, 751 (Mo. App. W.D. 2017) ("A ruling on a motion in limine is interlocutory and subject to modification at trial ... [Thus, i]n order to preserve a claim relating to a motion in limine , the proponent must attempt to present the excluded evidence at trial and, if it remains excluded, make a sufficient offer of proof." (citations and internal quotation marks omitted) ). However, this is not a situation where the issue of the use or admissibility of a piece of evidence was solely contested prior to trial in the context of a motion in limine. Carter made the functional equivalent of an offer of proof on the issue of the NAS Report's authoritative status during the trial through questioning of the State's fingerprint expert outside the presence of the jury. Under the circumstances, we find that the issue relating to the use of the NAS Report during the cross-examination of the expert was adequately preserved for our review.
Because the error is preserved, we review the trial court's decision for *96 abuse of discretion. See State v. Allen , 274 S.W.3d 514, 520 (Mo. App. W.D. 2008) (A "trial court's decision on whether to admit evidence is reviewed for abuse of discretion." (citation omitted) ); Byers v. Cheng , 238 S.W.3d 717, 729 (Mo. App. E.D. 2007) ("We will not reverse a trial court's determination on the admissibility of an expert's testimony [based on a learned treatise] absent a clear abuse of discretion." (citation omitted) ); Kansas City v. Dugan , 524 S.W.2d 194, 197 (Mo. App. 1975) (holding that "[t]he trial court cannot be said to have abused its discretion in not taking judicial notice of the article when it was never asked to do so ..."). A trial court abuses its discretion when its decision "is clearly against the logic of the circumstances then before the court[ ] and is so unreasonable and arbitrary that it shocks the sense of justice and indicates a lack of careful, deliberate consideration." Allen , 274 S.W.3d at 520 (citation omitted).
DISCUSSION
An alleged learned treatise that is authored "by someone not before the court" and "offered to prove the truth of the matter asserted[,]" such as the NAS Report in this case, is hearsay. Id. at 527 (citation omitted). As hearsay, such a writing is inadmissible at trial "as independent evidence of the facts asserted in the text, although [it] may be used on cross-examination to challenge an expert's credibility." Byers , 238 S.W.3d at 729 (citations omitted). However, use of the writing is allowed only "where there is evidence that the text or treatise so employed is authoritative." Embree v. Norfolk & W. Ry. Co. , 907 S.W.2d 319, 325 (Mo. App. E.D. 1995) (citation omitted); see also Dugan , 524 S.W.2d at 196-97 ("[A] party seeking to cross-examine a witness by means of an article or treatise must lay a foundation as to its authoritativeness. An article or treatise is not self-declaratory as being authoritative and, therefore, may not be indiscriminately used." (citation omitted) ). A text or treatise can be established as authoritative through (a) concession of the witness herself, (b) judicial notice, or (c) other experts. Embree , 907 S.W.2d at 325 (citation omitted); see also Coats v. Hickman , 11 S.W.3d 798, 803 (Mo. App. W.D. 1999) (stating same); Dugan , 524 S.W.2d at 197 (describing the three "alternative methods ... for establishing the authoritativeness of an article or treatise for purposes of cross-examination").
Here, defense counsel attempted to establish that the NAS Report was authoritative through two of the three methods-first by seeking judicial notice under section 490.150 and then by seeking a concession from the State's expert during questioning outside the presence of the jury. On appeal, Carter only focuses on the fact that the trial court did not take judicial notice of the NAS Report pursuant to section 490.150.
Carter's singular emphasis on section 490.150 to satisfy the "judicial notice" method of establishing that a writing is authoritative within a scientific field reflects a misunderstanding of the scope of this statute. Section 490.150 provides, "Public documents, purporting to be edited or printed by authority of congress, or either house thereof, shall be evidence to the same extent that authenticated copies of the same would be." (emphasis added). The provision simply addresses the authentication of certain public documents. However, the authentication of a document, in this case the NAS Report, independently provides no substantive support to the pertinent issue of whether the NAS Report is authoritative within the scientific field of fingerprint analysis. Carter conflates the distinct concepts of authenticating a writing with establishing that the document is authoritative. In the context *97 of this appeal, the former is irrelevant absent success in proving the latter.
More to the point, even assuming the trial court should have taken judicial notice that the NAS Report was authentic under section 490.150, Carter still needed to establish that the report was authoritative within the expert's scientific field. Embree , 907 S.W.2d at 325 (citation omitted); see also Coats , 11 S.W.3d at 803 ) (stating same). In this regard, Carter failed. Carter's voir dire of the State's expert provided the trial court no basis to find the NAS Report is an authoritative writing. In fact, the State's expert specifically testified that the NAS Report was not viewed as authoritative by any sanctioning body and was simply "considered a research report."[6] In the absence of any evidence that the NAS Report is authoritative in the relevant scientific community, Carter has failed to establish the trial court abused its discretion in refusing to allow the use of the NAS Report during the cross-examination of the State's expert.
Point denied.
CONCLUSION
Carter's conviction is affirmed.
All concur.

Taylor provided police a photo of the Xbox unit that included a partial serial number.

ACE-V stands for analysis, comparison, evaluation, and verification.

On August 28, 2017, amendments to section 490.065 became effective addressing the standard for admission of expert testimony in Missouri courts. The trial of this case occurred prior to this change and the amendments to section 490.065 are not relevant to this appeal.

All statutory citations are to the Revised Statutes of Missouri 2000 as supplemented through December 31, 2016.

While use of the NAS Report was prohibited, the trial court did not preclude defense counsel from using information contained in the report during cross-examination so long as no reference was made to the report itself.

Carter did not call an expert to establish the NAS Report was an authoritative writing.